### UNITED STATES v. BREESE et al.

(Circuit Court, W. D. North Carolina. August 27, 1909.)

**1. CONSPIRACY (§ 45*)—CRIMINAL PROSECUTION—EVIDENCE.**

On a trial for criminal conspiracy, in determining whether a conspiracy was formed and whether acts were done to effect the same, the acts and conduct of a defendant not on trial may be considered in connection with those of the defendant or defendants on trial.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 102; Dec. Dig. § 45.*]

---

2. CONSPIRACY (§ 47*)—CRIMINAL PROSECUTION—EVIDENCE.

In prosecutions for criminal conspiracy it is as competent to prove the conspiracy by circumstances as by direct evidence, but proof of the combination charged must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 106; Dec. Dig. § 47.*]

3. CONSPIRACY (§ 47*)—FEDERAL STATUTE—SUFFICIENCY OF EVIDENCE.

A charge under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), of conspiracy between officers of a national bank to embezzle, abstract, or willfully misapply its funds in violation of section 5209 (U. S. Comp. St. 1901, p. 3497), is supported by evidence that, acting together with a common understanding, defendants largely overdrew their respective accounts with the bank, to such an extent that they were wholly unable to meet the same, as they must have known, and that, to cover up such overdrafts, by a common understanding they placed worthless notes in the bank with the intent and result of injuring and defrauding the bank and impairing its capital.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. § 47.*]

4. CRIMINAL LAW (§ 312*)—EVIDENCE—INTENT.

Persons charged with crime will be held to have intended the necessary, usual, and actual result of their acts, and such presumption is not overcome by their testimony merely that they had no wrongful intent.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 26, 27; Dec. Dig. § 312.*]

5. CONSPIRACY (§ 28*)—FEDERAL STATUTE—EMBEZZLEMENT BY NATIONAL BANK OFFICERS—DEFENSES.

The most formal vote of the directors of a national bank cannot authorize the embezzlement, abstraction, or willful misapplication of its funds by an officer, and will not constitute a defense to a prosecution for conspiracy to commit such offense.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 41; Dec. Dig. § 28.*]

6. CRIMINAL LAW (§ 150*)—FEDERAL STATUTE—LIMITATION OF PROSECUTION.

Limitation does not begin to run against a prosecution for conspiracy between officers of a national bank to embezzle, abstract, or willfully misappropriate its funds so long as the conspiracy continues or acts to effect its object are committed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 275; Dec. Dig. § 150.*]

7. CONSPIRACY (§ 38*)—FEDERAL STATUTE—VIOLATION OF NATIONAL BANKING LAW—DEFENSES.

It is not a defense to a prosecution for conspiracy between officers of a national bank to embezzle, abstract, or willfully misappropriate its funds by means of excessive loans or overdrafts for their benefit that the Comptroller of the Currency did not do all he might have done to compel a correction of such irregularities.

[Ed. Note.—For other cases, see Conspiracy, Dec. Dig. § 38.*]

Prosecution of William E. Breese and Joseph E. Dickerson for conspiracy to commit an offense against the United States. Charge to jury.

See, also, 172 Fed. 761, 765.

A. E. Holton, Dist. Atty., for the United States.
Moore & Rollins and Locke Craige, for defendants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

NEWMAN, District Judge (charging jury). The defendants in this case are charged with conspiracy. Conspiracy is an agreement between two or more persons to do an unlawful thing, or a lawful thing by unlawful means. These defendants are charged with conspiring to do certain unlawful acts. The conspiracy charged against them is under section 5440 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3676). That section reads as follows:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the ·conspiracy, all the parties to such conspiracy shall be liable to a penalty," etc.

Under this section of the statutes, as you will perceive, it is necessary that one or more of the parties to the conspiracy should do some act to effect the object of the conspiracy. The purpose of this, you will also perceive, is that while parties might conspire and agree to do an unlawful thing, yet, if they change their minds and do nothing to ·carry it into effect, it will not constitute an offense. It is necessary that they should do some act to effect the object of the conspiracy.

It is charged that they conspired to commit an offense against the United States; that is, an offense in violation of section 5209 of the Revised Statutes of the United States. That section, so far as important here, is as follows:

"Every president, director, cashier, teller, clerk or agent of any association, who embezzles, abstracts or willfully misapplies any of the moneys, funds, or credits of the association, * * * shall be guilty of a misdemeanor," etc.

The indictment charges that the persons named therein, William E. Breese, being president, W. H. Penland, being cashier, and Joseph E. Dickerson, being a director, respectively, of the First National Bank ·of Asheville, on July 1, 1897, contriving and intending to injure and defraud the banking association, and one Reuben R. Rawles, and divers other individual persons too numerous to be here named, their shareholders, depositors, and creditors of the said banking association, ·did conspire to embezzle, abstract, and misapply the moneys, funds, and credits of the bank, and to fraudulently misapply the same to. their private uses.

It is further charged that, at the time aforesaid, the three persons named as such officers had in their possession and under their control, by virtue of their said offices, and while they were employed therein, moneys, funds, and credits of the said bank to a large amount, and of great value, to wit, $250,000, the particular kinds of moneys, funds, and credits being to the grand jurors unknown.

It is further charged that, in pursuance and fulfillment of their said conspiracy, combination, and agreement, the three persons named, Breese, Penland, and Dickerson, on the 1st day of July, 1897, did embezzle, abstract, and misapply a large sum of the moneys, funds, and credits of the banking association, to wit, the sum of $250,000 in value, of the said moneys, funds, and credits, the same being then and there in their possession and under their control, with intent to cheat. and ·defraud the said banking association, and the said Reuben R. Rawles, and divers other individual persons too numerous to be here men-

tioned, with shareholders, depositors, and creditors of the banking association. William E. Breese and Joseph E. Dickerson alone are on trial.

For the purpose of determining whether a conspiracy was formed, and in determining whether or not the defendants are guilty, you will have a right to consider the acts and conduct of Penland in connection with Breese and Dickerson. That is, in reaching a conclusion as to whether a conspiracy was formed, and as to whether acts were done to effect the same as charged, you will consider the evidence so far as it relates to Penland, as well as the evidence so far as it relates to Breese and Dickerson, although, as Breese and Dickerson only are on trial, a verdict could be rendered against them only.

If you believe that either of the defendants now on trial—that is Breese or Dickerson—was not a party to the conspiracy (if you believe there was a conspiracy), but that the other was guilty of a conspiracy, with Penland, of the character charged in the indictment, and that acts were done to effect the object of the conspiracy, as charged, then you would be authorized to find the defendant now on trial who did so conspire with Penland (if acts were done in furtherance of the conspiracy) guilty on this trial.

It requires two persons to form a conspiracy; one person cannot conspire with himself; but one person may be convicted of conspiracy although the other conspirator is not on trial. To explain it to you more fully: If Breese, one of the defendants on trial, conspired with Penland, and acts were done to effect the object of the conspiracy, you might convict Breese on this trial. Or if Dickerson conspired with Penland, and acts were done to effect the object of the conspiracy, you might convict Dickerson on this trial. If Breese and Dickerson conspired with each other, whether Penland was or was not a party to the conspiracy, if acts were done in furtherance of the conspiracy, and to effect the object of the conspiracy, then you would convict both Breese and Dickerson on this trial. If you believe that all three were parties to the conspiracy, and acts were done to effect the object of the conspiracy, then you would be authorized to convict both Breese and Dickerson on this trial.

It is not necessary, in order to establish the fact of a conspiracy, that some one should have testified that they heard the alleged conspirators agree and combine together to do the unlawful thing, but the fact of a conspiracy may be gathered and derived by the jury from the combined and concerted actions of the alleged conspirators in the commission of the unlawful act. After a conspiracy is formed, the acts of each and all of the conspirators are binding upon the other conspirators. It is not necessary that all of the conspirators should actually assist in doing all the acts necessary to carry out the conspiracy, but one of the conspirators may do one act, and the others other acts, if the tendency and intent and purpose of all the acts is in pursuance of the unlawful agreement, and to carry out and effectuate the same, and to accomplish a common unlawful result.

It is proper, gentlemen of the jury, that I should give you a definition of the offense which the defendants here are alleged to have conspired to commit. Embezzlement, speaking generally, is a breach of

trust or duty with respect to moneys, properties, or effects in possession of a party and intrusted to him by another, and the appropriation of such moneys, properties, or effects, or a part thereof, to the use of the party so intrusted. Embezzlement, as applied to this case and to the relation sustained by these defendants to the First National Bank of Asheville, is this: The charge is that they were intrusted with moneys, funds, and credits of the First National Bank of Asheville, to which they bore the relation of officers, charged in the indictment as I have stated to you, and that, being so intrusted, they conspired to misapply the same to their private uses, and did, in furtherance of that conspiracy, embezzle moneys, funds, and credits of the bank to the extent of $250,000. Embezzlement is a technical expression, and applies only to cases in which the party charged occupies a trust or fiduciary relation, and takes the money or properties so intrusted and unlawfully applies the same to his own use. It is different from every other form of taking the property of another, in that it embraces the fact of having the same in possession, and in trust when it is taken, and misapplied to the private use of the person charged.

To abstract does not involve the same trust relation. It means to "take from," or "withdraw," so that to abstract the moneys from the bank is to take and withdraw from the possession and control of the bank its moneys, funds, and credits. To constitute the offense of abstracting, it should be done without the knowledge and consent of the bank, and with intent to injure and defraud it or some other company or person. Abstracting the funds of the bank may be done by one act or a succession of acts. It may be done under the color of loans, discounts, or checks. The means used would be immaterial if the result is the wrongful withdrawal of funds or moneys from the bank without its actual knowledge and consent, and to convert the same to the use and benefit of the abstracter.

Willful misapplication, as described in the statute, means a misapplication willfully and unlawfully made by one or more of its officers of the moneys, funds, or credits of the bank, and done with intent to injure the bank, and the funds so misapplied must be converted to the use of the officer or officers making such misapplication, or to the use of some other person than the bank. Of course, embezzlement would embrace either misapplication or abstraction, but the reverse would not be true, because a person might be guilty of abstraction and misapplication without being guilty of the technical offense of embezzlement.

It will be necessary for you to inquire, first, whether there was a conspiracy between Breese, Dickerson, and Penland, or any two of them, and in ascertaining that you will look at all of the acts and transactions shown in this evidence. It is not necessary, as I have stated to you, that there should be an express agreement in words between them to constitute a conspiracy, but it is sufficient that they acted together with a common understanding and a common intent to accomplish a common unlawful purpose. It is sufficient that the minds of the parties met understandingly so as to bring about an intelligent and deliberate agreement to do the acts and commit the offense

charged, although such an agreement be not manifested by any formal words.

If you believe that the conspiracy was formed and existed between these defendants, or any two of them, as I have stated to you, and there was a common agreement and understanding to that effect—that is, to embezzle, abstract, or misapply the moneys, funds, or credits of this bank—then you would proceed to inquire, was an act done, or were acts done to effect the object of the conspiracy? The conspiracy and the overt act, as it is called—that is, an act done to effect the object of the conspiracy—are separate and distinct, though, as I have stated to you, you may gather or derive the fact that there was an unlawful agreement between the parties from combined and concerted actions in the performance of the unlawful act.

It is as competent to prove an alleged conspiracy by circumstances as by direct evidence. In prosecutions for criminal conspiracy, the proof of the combination charged must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. The acts of the parties in the particular case, the nature of those acts and the character of the transactions or series of transactions, with the accompanying circumstances, as the evidence may disclose them, should be investigated and considered as the source from which evidence may be derived of the existence or nonexistence of an agreement, which may be expressed or implied, to do an unlawful act. Guilty connection with a conspiracy may be established by showing association by the persons accused in and for the purpose of the prosecution of the illegal object. Each party must be actuated by an intent to promote the common design, but each may perform separate acts or hold distinct relations in forwarding that design. There must be an intentional participation in the transaction or transactions, with a view to the furtherance of the common design and purpose. If persons work together to advance an unlawful scheme, having its promotion in view, and actuated by the common purpose of accomplishing the unlawful end, they are conspirators.

If you believe that these defendants, or any two of them acting together with a common understanding, largely overdrew their accounts with the bank, and to such extent that they were wholly unable to meet the same, and that this must have been known to them when such overdrafts were made and permitted, and that then, to cover up and make good these overdrafts, they placed or caused to be placed, by a common understanding, worthless notes in the bank, and thereby the capital of the bank was impaired and its credit destroyed, then, in the opinion of the court, the defendant so acting would be guilty under this indictment. This should be done with intent to injure and defraud the bank, but such intent may be gathered by you from the acts themselves, if you believe them to have been knowingly and willfully and intentionally done, as I have stated to you.

The willful misapplication made an offense by this statute means the misapplication for the use and benefit of the party charged, or some company or person other than the association. Therefore, to constitute the offense of willful misapplication, there must be a conversion

to his own use or the use of some one else of the moneys, funds, and credits of the association by the party charged.

If, therefore, the moneys, funds, and credits of the First National Bank of Asheville were willfully misapplied, as charged in the indictment, and the moneys, funds, and credits were converted from the use of the bank to the use of the defendants, thereby, as a necessary, natural, and legitimate consequence, the bank's capital was reduced or placed beyond the control of its directors, and its ability to continue in business was destroyed, the intent to injure or defraud the bank must be presumed. Acts involving such consequence, when knowingly and willfully committed, establish the guilty intent to injure and defraud mentioned in the statute, and disclose a situation utterly inconsistent with innocent intent.

It is not necessary that the fact should be shown to your satisfaction and beyond a reasonable doubt that the defendants had a motive or ill will to constitute an intent to defraud. The intent to defraud may be entirely consistent with an interest on their part for the success and welfare of the institution.

There must be an intent to commit the unlawful act, and that intent must be corrupt. There must, therefore, be a wrongful conversion or appropriation by a bank officer of some of the moneys, funds, or credits of the bank to his own use, or to the use of some person other than the bank, with the intent just stated.

The defendants have been allowed to testify as to their intent in the various transactions brought out here. If the ordinary, usual, and necessary result of the acts of these defendants was to violate the law, either to embezzle, abstract, or misapply the moneys, funds, and credits of this bank, the fact that they say now that they did not have any wrongful intent could not prevail against what would be the ordinary, usual, and necessary result of their acts. Persons charged with crimes will be held to have intended the necessary and actual results which would follow their acts.

The charge approved by the Supreme Court of the United States on the subject of intent, in a case like this, substituting the name of the bank in question here instead of the bank in question there, is as follows:

"The law presumes that every man intends the legitimate consequence of his own acts. Wrongful acts, knowingly or intentionally committed, can neither be justified or excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act which results in loss or injury is proved to have been knowingly committed. It is a well-settled rule, which the law applies in both criminal and civil cases, that the intent is presumed and inferred from the result of the action. If, therefore, the funds, moneys, or credits of the First National Bank of Asheville are shown to have been either embezzled, or willfully misapplied by the accused and converted to his own use, whereby, as a necessary, natural, or legitimate consequence, the association's capital was reduced or placed beyond the control of the directors, or its ability to meet its engagements or obligations or to continue its business was lessened or destroyed, the intent to injure or defraud the bank may be presumed."

If a man knows that the act he is about to commit will naturally or necessarily have the effect of injuring or defrauding another, and he voluntarily and intentionally does that act, he is chargeable, in law,

with the intent to injure or defraud. It is not necessary that his object or purpose was primarily to injure or defraud. It may have been to benefit himself. These terms, used in the statute, mean nothing more than that general intent to injure or defraud which always arises, in contemplation of law, when one willfully or intentionally does that which is illegal or fraudulent, and which, in its necessary and natural consequence, must injure another. The law presumes that every man intends the natural and ordinary consequence of his acts, and, as I have stated to you, wrongful acts knowingly or intentionally committed cannot be justified on the ground of innocent intent.

It is not meant, by what I have stated to you, to say that these defendants might not, by proper evidence, by their own evidence, if they can do so, show to you that there was nothing unlawful or wrongful about their acts and transactions which have been put in evidence here. If they have shown by their evidence, or any other evidence, that there was nothing wrongful or unlawful about their acts, or if the whole of the evidence taken together failed to satisfy you that such acts were wrongful and unlawful in the way I have stated to you, you should give them the benefit of it.

Evidence has been offered to show the action of the board of directors on different occasions, as shown by the book of minutes of the bank, and also by the evidence of the defendants, that action was taken by the board of directors authorizing certain loans and certain transactions, and to show that what was done in the bank was known to the board of directors. I instruct you, about this question, that an arrangement or agreement with the bank or its duly authorized directors, committees, or officers must be an exercise of their official discretion, in good faith and without fraud, and made for the advantage of the association, or its supposed advantage. If loans or discounts or overdrafts are permitted to be made in bad faith, for the personal advantage and account of the officers, and not in the honest exercise of official discretion, such action would not be the action of the bank, or the consent of the bank and the defendants would not be protected by such authority so given, if they were parties to the arrangement. If fraudulent credits were given upon the books of the bank, either to the defendants or other persons acting for them, neither one would acquire thereby any right to the funds represented by such credits. Credits upon the books of the bank, to be valid and to create the relation of creditor and debtor between the parties having such credits and the bank, should represent value received by the bank in the shape of cash, or what is honestly believed to be its equivalent. It must represent bona fide indebtedness. The authority of the directors, officers, or committees of the bank extend only to legitimate transactions intended for the benefit of the bank, and, if you find that such authorization was given as claimed, you should consider with whom and under what circumstances it was made, whether in good faith and for the actual or supposed benefit of the bank. Whether Rawles, the member of the board besides the persons charged in this indictment, knew or did not know of the character of the transactions, if you believe that loans were permitted, overdrafts allowed, and the substitution of worthless notes for overdrafts was permitted, and that the

same was done for the personal advantage of Breese, Penland, and Dickerson, or either of them, such action would confer no valid authority. Every act of fraud, every departure from duty by the board in connivance with these defendants, or either of them, for the plain purpose of sacrificing the interests of the stockholders of the bank, would be excess of power, from its illegality, and, as such, void as an authority to protect them against the charge here made, if the charge be otherwise sustained.

The most formal vote of the board of directors could not authorize the embezzlement, abstraction, or willful misapplication of the funds of the bank. To knowingly and willfully allow the bank's moneys, funds, and credits to be withdrawn on worthless notes, knowing the notes to be such, would be a misapplication of the funds of the bank in the meaning of the statute on the part of the official of the bank allowing such withdrawal. It is not necessary that cash should be actually paid over the counter of the bank to constitute a misapplication of the moneys, funds, and credits. The funds of the bank might be appropriated by these officers to their own use, or the use of a third party, without actually handling any of the money, by giving to some one a fraudulent credit on its books and then permitting the same to be shifted from one person to another, by means of checks, if by the transaction the value of the moneys, funds, and credits of the bank was lessened. To substitute a worthless note knowingly and willfully for a good, solvent note, understanding the substituted note to be worthless and the one withdrawn good, would be a misapplication of the credits of the bank.

It is not necessary that the jury should find that the amount or exact sum stated in the bill of indictment was intended to be embezzled or abstracted. If, under the circumstances and conditions already mentioned, you find that the defendants converted to their own use moneys, funds, and credits of the bank, no matter how small the amount may have been, it would be sufficient to sustain a verdict of guilty, provided the same was so misappropriated by the defendants with a common design and purpose to abstract and misapply the funds with intent to injure and defraud the bank.

If you find from the evidence that Breese, Dickerson, and Penland, or any two of them, were officers of the First National Bank of Asheville, as charged in the indictment—no question is made about that, as I understand it; however, it is a fact for you to determine— and as such they had the custody and control and management of the moneys, funds, and credits of the said banking association, and as such officers and directors that they agreed with each other to allow the moneys, funds, and credits to be wrongfully withdrawn, abstracted, or willfully misapplied by them, or either of them, for their own use and benefit, or for the use and benefit of another person other than the banking association, and in pursuance of this agreement they unlawfully and willfully and fraudulently withdrew the moneys, funds, and credits of the banking association, and fraudulently converted the same to their own use, it makes the conspiracy complete, and it would be your duty to return a verdict of guilty.

This case comes within the class of cases which will be barred in three years from the time the offense is committed; that is, the offense cannot be prosecuted unless it has been committed within three years prior to the finding of the bill of indictment. The defendants have invoked from the court the application of this law to the present case.

In the opinion of the court the law applicable here, and to the facts of this case, is this: The indictment charges a conspiracy was entered into on July 1, 1897. It would be immaterial whether the conspiracy charged, if you believe there was a conspiracy, originated more than three years before the finding of the bill of indictment, indeed it would be immaterial if it was entered into soon after this bank was established, in 1888, 1889, 1890, or 1891, provided you believe that overt acts were committed all along down during the succeeding years and to a period within three years before the finding of the bill of indictment; if also there was a continued unlawful agreement and understanding between the parties, amounting to a conspiracy, all along down to and within the period of three years before the bill of indictment was found true on October 5, 1897. The law is that there may be a renewal or a continuance of a conspiracy if there be renewed and continued combination, agreement, and understanding between the alleged conspirators, and successive acts are done in pursuance of and to effect and consummate the conspiracy. No matter when the conspiracy originated, if you believe that there was a continued understanding, expressed or tacit, amounting to a conspiracy, between the alleged conspirators, or any two of them, and acts were done in furtherance of and to effect the object of the conspiracy along, down to, and embracing a period within three years before the finding of this bill of indictment, which, as stated, was October 5, 1897, then you would be authorized to consider the same and act upon the same, notwithstanding the fact that these defendants, in your opinion, had an agreement and understanding and did acts to consummate and carry the same into effect more than three years before the finding of the bill of indictment. The conspiracy, however, must have been in existence and have been in operation within three years of the finding of the bill of indictment, and, further, there must have been some act done by at least one of the conspirators to effect the object of the conspiracy within the three years.

No person can borrow from a national banking association more than one-tenth of its capital actually paid in and unimpaired, and no person can borrow from such banking association on the security of the shares of its own capital stock, unless it be upon a debt previously contracted in good faith, and, while to do this would be a violation of law, it is not a criminal liability unless it involves, under the instructions given you, a misapplication of the funds of the bank to the use of the person so violating the law, and with the intent to injure and defraud the bank in the way I have stated to you.

Something has been said here about communications to the Comptroller of the Currency, and it is claimed, as I understand it, that this officer was satisfied with the condition. It will be entirely for you to

judge, but, so far as I have been able to see, the Comptroller was trying to get the bank to cease overdrafts and excessive loans; but even if it be true that the Comptroller of the Currency did not do all he should have done towards correcting irregularities in the bank, this would not be an excuse for acts otherwise illegal.

The jury should be satisfied of the guilt of these defendants beyond a reasonable doubt. They come before you with a presumption of innocence in their favor, and this presumption continues until the government has, by competent evidence, established every ingredient necessary to constitute the offense with which they are charged, beyond a reasonable doubt. Reasonable doubt is not a bare conjecture or a bare possibility of innocence. It is a doubt, as the law expresses it, arising from the evidence or lack of evidence in the case. A doubt born of a mere merciful inclination or disposition to save the defendants from the penalty of the law, or one prompted by sympathy for them or those connected with them, is not what is meant by a reasonable doubt. If the whole evidence, when carefully weighed and compared, produces in your mind the settled conviction or belief of the guilt of the defendants, such a conclusion as you would act upon in the more weighty and important matters relating to your own affairs, you should find a verdict of guilty in accordance with that conviction or belief. You should be satisfied beyond a reasonable doubt that the acts done were done with wrongful and fraudulent intent to embezzle, abstract, and misapply the moneys, funds, and credits of the bank, although the intent, as I have stated to you, may be gathered from the character of the acts if you believe the character of the acts justifies such finding.

Evidence has been offered by the defendants to show good character; that is, good character prior to the time when this offense was alleged to have been committed, and indeed prior to the time when the bank failed. This evidence goes to you to have the weight to which you think it is entitled. It is a matter which the jury may fairly consider. It has been held to be sufficient in a proper case, of itself, to raise a reasonable doubt. It is for you, however, to give it the weight to which you think it is entitled. If, notwithstanding the evidence as to good character, you are satisfied that they are guilty under this indictment, you should so find.

The jury should not be influenced in reaching a conclusion in this case by any feeling of friendship for these defendants or their friends, or allow themselves to be influenced in any way against them by any other feeling, but you should disregard absolutely and entirely any feeling or influence one way or the other, except to reach a true verdict on the facts as developed by the evidence here, applying to that the law as given you in the charge of the court.

Reference has been made here at various times to other trials. You should not consider the same in any way whatever in arriving at a verdict in this case. You should determine this case on the law and the facts as I have stated to you.

The jury is the exclusive judge of the facts, and, while the court may comment on the same, I have not done so to any great extent, as you will observe, and whatever the court has said is simply by way

of comment, leaving the full determination of the facts to the jury. If the government has failed to show to your satisfaction, and beyond a reasonable doubt, that a conspiracy was formed and existed as charged in the indictment, either to embezzle, abstract, or misapply the moneys, funds, and credits of this bank, and also that some act was done by them in furtherance of and in execution of the conspiracy, as I have stated to you, then you should acquit the defendants or either of them as to whom it has not been so shown. If, on the other hand, the government has established to your satisfaction and beyond a reasonable doubt that the defendants entered into a conspiracy, as charged, and continued the same to a period within three years prior to the finding of this bill of indictment, and did acts within said period to execute the same, then you should find the defendants now on trial guilty, or any one of them whom you may believe to be guilty, as I have stated to you.

You have been patient and attentive, gentlemen, during the long trial of this case, while the evidence was being offered and while the case was being argued, and while I have been instructing you as to the law, and it is a case which deserves this careful consideration and attention. You may retire to your room and give the case a fair, impartial, and just consideration, and find a true verdict in accordance with your convictions and belief.

If you believe that both of the defendants now on trial are guilty, so express it when you return to the courtroom. If you believe one of the defendants now on trial to be guilty and not the other, so express it. If you do not believe either of them to be guilty, say so. Take the case, gentlemen, and find a verdict.

