### DODGE v. UNITED STATES.*
### No. 7581.

Circuit Court of Appeals, Ninth Circuit.

Dec. 21, 1934.

Rex Hardy, Vernon W. Hunt, and Caesar A. Roberts, all of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Robert Winfield Daniels, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment of conviction for violation of Rev. St. § 5209 (12 USCA § 592). In an indictment containing six counts, defendant was charged with violation of the statute by abstracting and taking into his possession "certain of the moneys, funds and credits" of the Beverly Hills Branch of the Security First National Bank of Los Angeles. The defendant waived a jury, and, at the conclusion of the trial, the judge found the defendant not guilty on three counts and guilty on three counts, and sentenced defendant to the county jail for the period of three months on each of said counts, sentences to run consecutively. Only the counts involved in this appeal will be noticed.

Defendant, appellant here, was a vice president of the Security First National Bank of Los Angeles, and in charge of its Beverly Hills Branch. The facts relating to the third count of the indictment are as follows: On November 29, 1930, the sum of $3,000 was charged against the account of one Kate R. Miller on her own check, and on the same day Olga Printzlau signed a note payable to defendant in like amount. This note was placed in an envelope bearing the name "Milton Ruggles." Defendant did not indorse the note, but retained it, in the same envelope, in his desk. The Printzlau account was credited with the sum of $3,000, which was subsequently checked out. Previously Olga Printzlau had borrowed $5,000 from Mrs. Miller, but denied having borrowed the $3,000; denied knowledge of the defendant having done so; and, while admitting having signed the note, denied knowledge of its contents, stating that she had

*Rehearing denied March 1, 1935.

signed it at defendant's request and did not pay attention to what she was signing. Mrs. Miller stated that Dodge was employed by her to handle her investments and property; that he had placed many loans for her over a period of years, including a secured loan to Olga Printzlau, but that she did not loan Miss Printzlau $3,000 in November of 1930 or at any other time; that defendant had suggested on or about November 29, 1930, that she make a loan of $3,000 to one Milton Ruggles, which would be fully secured; that she consented and gave defendant her check for the purpose of making the loan. Defendant on this point testified in his own behalf that he did not get or gain by the transaction and that Miss Printzlau needed a loan, that she signed the note at his request; and that he believed that she would be able to repay the loan. He did not explain the Printzlau testimony that she did not borrow $3,000 from Mrs. Miller nor know that defendant had done so.

The evidence as to transactions under the fourth count show that Mrs. Miller, on suggestion of defendant that she make a secured loan of $2,750 to one R. J. Hodges, wrote her check for that amount and gave it to defendant, leaving the details to him. The check was credited to a joint savings account in the name of "Fred A. or George R. Dodge." Fred A. is the father of appellant. The sum of $2,650 was charged out of the account and credited to the account of W. H. Sage. Defendant testified that the account "Fred A. or George R. Dodge" was the sole property of his father; that his father was indebted to Sage, who wanted payment; that he lied to Mrs. Miller, in that there was no such person as R. J. Hodges. It appeared that no note was given for the money, nor was any security placed.

As to the sixth count, it was testified that the account of Cenne F. Tunberg, which was under the name of her son, Karl O. Tunberg, was charged with $1,000, withdrawn by defendant on March 26, 1929; on November 13, 1930, defendant caused that account to be credited with $1,006.42, and on the same day he charged the account and withdrew therefrom the sum of $1,500; on March 25, 1931, defendant caused the account to be credited with the sum of $1,501.21, and on the same day charged the account and withdrew therefrom the sum of $1,800, which amount he credited to his own account, and for which he signed a promissory note in favor of Mrs. Tunberg, and left the same with the collection department of the bank; and on April 27, 1931, defendant charged

the account with the sum of $2,000, which amount he credited to his own account. He signed a promissory note for this amount, and left the same with the collection department of the bank. Cenne F. Tunberg testified that defendant had given her advice relative to investments at various times, assisted her in keeping accounts, and had made some loans for her. She permitted him to retain her bank book. Mrs. Tunberg said that she loaned him $1,000 in November of 1930, but that she did not loan him any other money. The defendant called on her in May, 1932, and told her that he had used $3,800 of her money and had left his notes therefor at the bank. She said that she did not know when he increased the $1,000 loan to $1,800, nor when he borrowed the $2,000, and that she did not know whether she would have objected. Defendant stated that Mrs. Tunberg had told him to borrow from her account whenever he wanted to. He said, too, that he told her of these transactions in question, and that she never complained, but he did not state when he told her of these transactions.

Defendant at the close of the government's evidence on each count moved for dismissal on the ground that there was not sufficient evidence upon which to base a judgment of guilty, and that it was not established by the government that the defendant had abstracted any of the funds of the bank and converted them to his own use, as alleged in the indictment.

█ Appellant contends as to counts third and fourth that there was no evidence "of abstracting the funds of the bank" because the bank's depositor wrote the checks. It is immaterial by what means defendant accomplished the abstraction. "* * * It may be done under color of loans, discounts, checks, and the like. The means used do not change the nature of the act. If the necessary or natural result is to wrongfully withdraw funds or moneys of the bank, * * * and to convert the same to the use and benefit of the abstractor, or to that of some person or company other than the bank, the means resorted to are of no consequence, and in no way affect its criminal nature." U. S. v. Breese, 131 F. 915, at page 921 (D. C. N. C.); U. S. v. Breese, 173 F. 402, 406 (C. C. N. C.). The funds so abstracted may also have been taken for the use and benefit of some one other than the person so abstracting. U. S. v. Harper (C. C.) 33 F. 471, 479.

██ The evidence is clearly sufficient to sustain conviction under the sixth count;

all the necessary elements of the offense are there. It does not avail defendant that he left his promissory note for the sums abstracted, if the funds were taken without the consent of the depositor. The testimony of Mrs. Tunberg is positive that she had not loaned defendant any money other than the first $1,000.

In a case involving similar facts under the same statute, a conviction was upheld by this court in Sheridan v. U. S. (C. C. A.) 236 F. 305, 311.

Affirmed.