# CHARLESTON

## STATE v. GILLISPIE.

Submitted September 6, 1907.    Decided December 10, 1907.

1. CRIMINAL LAW—*Trial—Instructions—Repetition.*

    It is not error to refuse an instruction which is in substance and effect a repetition of another already given.  (p. 154.)

2. INTOXICATING LIQUORS—*Illegal Sale—Evidence.*

    Upon the trial of an indictment for selling, offering and exposing for sale without a state license therefor "spirituous liquors, wine, porter, ale, beer and drinks of like nature" under section 913 Code of 1906, when it is proved that the defendant sold a drink known as "senoj" cider, it is competent to prove that the other parties had handled and sold, two years before, a cider having the same commercial name and designation, from the same manufacturers, and that the same was intoxicating.  (p. 156.)

3. CRIMINAL LAW—*Evidence—Other Offenses.*

    Upon such trial, evidence of previous sales and that defendant had received consignments of senoj cider about the time of the alleged sales is admissible.  (p. 156.)

4. SAME—*Evidence.*

    Syllabus, point 1, *State* v. *Good,* 56 W. Va. 215, approved and applied.  (p. 153.)

Error to Circuit Court, Webster County.

Del Gillispie was convicted of the illegal sale of liquors, and brings error.

*Affirmed.*

W. S. WYSONG, for plaintiff in error.

W. L. WOODDELL, for the State.

MCWHORTER, JUDGE:

Del Gillispie was indicted in the circuit court of Webster county for unlawfully selling and offering and exposing for sale on the—day of September, 1905, in said county without a state license therefor "spirituous liquors, wine, porter, ale, beer and all drinks of like nature."

The defendant entered his plea of not guilty and a jury was impanneled and returned a verdict of guilty. The defendant, by counsel, moved the court to set aside the ver-

dict of the jury and grant him a new trial, of which motion the court took time to consider. On the next day, April 6, 1906, the court overruled said motion and entered judgment against the defendant for a fine of $200 and three months imprisonment in the county jail, to which judgment the defendant obtained a writ of error and *supersedeas.*

On the trial the defendant excepted to various rulings of the court in admitting testimony on the part of the State claimed by defendant to be inadmissible, and erroneously refusing to admit testimony offered in behalf of defendant. The court gave instructions on behalf of the State, numbered respectively 1, 2, 4, 5, 9, 10 and 11, to the giving of which the defendant objected and excepted; and the court also refused an instruction offered on behalf of defendant, marked instruction "B," to which ruling of the court in refusing said instruction the defendant excepted. A part of the exceptions taken by the defendant were saved to him in separate bills of exceptions, the first of which goes to all the instructions given on behalf of the State.

Instructions Nos. 1 and 2 are based upon point 1, syllabus, *State* v. *Good*, 36 W. Va. 215. No. 4 tells the jury that they should consider all the testimony offered on behalf of the State and on behalf of the defendant in arriving at a proper verdict in the case. No. 5 tells the jury they should consider all evidence offered on behalf of the State and on behalf of the defendant in determining the effect of the use and drinking of such cider, mixture, preparation, or liquid upon the person to whom it was sold in determining whether the same would produce intoxication. No 9 tells the jury that in weighing the credibility and the testimony of any witness who testified in the case they should take into consideration his interest in the result of the trial, if any he had, and demeanor in testifying, and that they were at liberty to believe or disbelieve the testimony of any witness or witnesses. In No. 10 the jury were told that it was not incumbent upon the State to prove drunkenness as a result of drinking the cider, mixture, preparation, or liquid sold by the defendant to justify a conviction, but that it would be sufficient to warrant a conviction of the defendant if they should believe from the evidence beyond

a reasonable doubt that he, without a state license therefor in said county and within a year prior to the finding of the indictment, sold any of said articles that would produce intoxication. And No. 11 tells the jury that if they should believe from the evidence beyond a reasonable doubt that the defendant, without a state license therefor in Webster county and within the said time, sold spirituous liquors, wine, porter, ale, beer, or drinks of like nature they should find him guilty as charged in the indictment. These instructions seem to be unobjectionable and nothing is urged against them in the brief of counsel for defendant.

Bill of exceptions No. 2 goes to the ruling of the court on the refusal of the defendant's instruction "B." By this instruction the court was asked to tell the jury that "they must believe beyond a reasonable doubt from the evidence that the cider in evidence would produce intoxication, before they could find him guilty, and if the jury have any doubt in their minds from the evidence as to whether or not said cider would or did produce intoxication as alleged in the indictment then they should find the defendant not guilty." This instruction may be misleading, because, after being charged therein concerning a reasonable doubt, they are told that if they have "any doubt" in their minds as to the intoxicating qualities of the cider they should find the defendant not guilty. The latter part of the instruction seems to be contradictory of the first part in that the defendant should have the benefit of any doubt, however slight and whether reasonable or not. But whether this instruction was good or bad, that portion of it which was proper to be given was fully covered by another instruction given on behalf of the defendant, where the jury are told "that if they have reasonable doubt from the evidence whether the cider in evidence would produce intoxication the defendant is entitled to the benefit of said doubt." It is not error to refuse an instruction which is in substance and effect a repetition of another already given.

The further exceptions of the defendant go to the admission of testimony on the part of the State over the objection of the defendant as set out in bill of exceptions No. 4. Witness Sizemore was asked: "Did you state before that body (meaning the grand jury) that you had

bought cider from Del Gillispie about the month of September, 1905, that would intoxicate." Witness replied, " If I understand you right you want me to repeat the statement that I made before the grand jury. Q. Answer my question? A. Well, can I go on and make a statement? Q. Answer my question? (The Court.) Let him answer the question and go on and make his statement." The witness then said, " I believe I got some cider there that really would have some effect and make a man feel a little better than what he did; make a man have different feelings. I never got drunk on it." So that it appears that witness did not tell what he had stated before the grand jury, but simply states the fact that he believes he got some cider there that would have some effect, &c.

The next question mentioned as excepted to in same bill of exceptions, No. 4, is, " In your judgment from the quantity you drank there (referring to the cider in question) do you believe a sufficient quantity would produce drunkenness." In *Carl* v. *State*, 87 Ala. 17, it is held: " In a criminal prosecution for the sale of intoxicating liquors in violation of a local prohibitory liquor law, the article sold being compounded by a druggist, and the bottles labeled ' Elixir Cinchona,' or ' Cinchona Bitters;' it is permissible for the prosecution to prove that it was bought and used by many persons as a beverage, the use to which it was applied being illustrative of its nature and properties; and a person who had swallowed it may state its exhilarating effect on himself, and, though not technically an expert, may testify that, 'in his opinion it would produce intoxication.' "

Defendant further in said bill of exceptions, in the examination of P. J. White, a witness for the State, objected to the following question: " Have you ever handled within the last few years any senoj cider or had it handled about your store or about your stores?" Which objection was overruled and witness answered, " Yes, sir;" and was also asked the following question, which was objected to, " Can you be mistaken about the effect of the senoj handled by you." and answered, " Our men to whom we sold it were intoxicated and at the same time they were drinking this

cider and I knew of nothing else by which they could have gotten drunk." It is shown by the testimony of White that the firm of Heckmer & White handled the senoj cider some two years before; that this cider was manufactured by Jones & Company of Louisville, Kentucky, and that the name "senoj" given to the cider simply was the name of Jones spelled backwards, that when the firm found that their men were getting drunk on it they notified the house from whom they bought it and compelled them to take it back. This name "senoj" was the commercial name and designation given to this special kind of cider, mixture, liquid, or preparation sold as cider, and there is nothing in the record to show that any other article was placed upon the market by any other firm than Jones & Company of Louisville, Kentucky, under the commercial name of "Senoj." In *Commonwealth* v. *Goodman*, 97 Mass. 117: "On a complaint under Gen. Sts. c. 86, sec. 34, for unlawful keeping of intoxicating liquor for sale, evidence of a chemical analysis of other beer called by the same name as beer kept for sale by the defendant, and similar in color, flavor and strength, is competent as tending to prove that the defendant's beer was of like quality in all respects to the beer analyzed." *Commonwealth* v. *Pease*, 110 Mass. 412; *State* v. *Wills*, 80 S. W. (Mo.) 311; and *Murry* v. *State*, 79 S. W. (Tex.) 568.

In same bill of exceptions a question asked witness Joe Berry is excepted to. The witness had stated that he was in the employ of Heckmer & White, and that White had bought six barrels of senoj cider from the Sutton Grocery Company, and was asked if that cider was intoxicating, and answered: "I found the men were getting drunk on it;" and was asked the question, "He (meaning Mr. White) returned it?" The question was objected to and the objection overruled and the question answered in the affirmative, It is proven by W. C. Diller, agent, at Webster Springs, of the Holley River & Addison Railroad Company, over the objection of the defendant, that, on the 5th of August, 1905, Gillispie received three barrels of senoj cider besides several other shipments of barrels, half barrels and kegs of cider at various other times from May 12th to September 29th, 1905. "Evidence of previous sales and that ac-

cused had received consignments about the time of the alleged sale is admissible."—4 Cur. Law, 274; and authorities there cited.

It is proved by witness White that senoj was intoxicating. Witness Berry stated that it would intoxicate. Pole Baughman testified that in the summer of 1905 he purchased cider from defendant; bought three glasses and drank it and that it made him a little light-headed; that he was drinking no whiskey at the time; that he paid ten cents a glass for the cider; and that the effect upon him was similar to the effect produced by drinking whiskey, that he felt the same way. Currence Baughman testified that he bought cider from Gillispie in August and September, 1905, two glasses at one time and one at another; paid ten cents a glass for it. When asked if the cider he got there had any intoxicating effects, answered, "I think it did;" that he had taken one small drink of whiskey, that the whiskey he drank would not have produced the degree of intoxication he experienced after having drunk the cider. Chris Baughman bought one glass in the summer of 1905 for which he paid ten cents; said that it made him a little light-headed.

The defendant admits on cross-examination that he handled cider called "senoj" in 1905; that he got a barrel of it and the first he sold out of the barrel some fellow, he believes it was Will Cooper, said he believed if a fellow would drink enough of that he could feel some effect from it; that he didn't sell any more of that, but took what was left of it and "put it half water, so that I knew they could not feel any effect from that, and I never sold any senoj after that but what was half water or more." And he stated that that had been probably three years ago. Says he never handled any senoj since that time "unless I put it half water;" that he saw the traveling salesman that sold him the senoj and told him he thought it was a little stronger than it ought to be, and the salesman suggested if it was too strong he might water it and he told him if he shipped him any more to send him a weaker grade, and witness thought what he got after that was some weaker than the first.

Witness Sizemore says he saw a great many men intoxicated at defendant's place, he doesn't know whether they

were drunk on cider or whiskey.   From the evidence the defendant's place of business seemed to have been a kind of rendezvous for the class of people who spend their time and congregate about saloons and places where they can take their sprees.   Witnesses stated that they did not know whether the persons they saw there were drunk on the cider they were getting or on whiskey.   The defendant himself, while on the witness stand, made a very significant voluntary statement when he said, "I wish to state as there has been a great deal of talk about the sale of senoj, I will not buy any more senoj and will not sell any more of it. Yet, I can not see that it is any violation of the law." Which statement, taken together with the admission that he had never hanaled any senoj since the first barrel without putting it half water, and the further fact that he had received a consignment of three barrels of senoj August 5, 1905, makes it very clear that he had been handling and selling it constantly ever since he began to deal in it, notwithstanding he had been warned and advised against it by various persons.   After he was informed by one of his customers of its intoxicating character, defendant states that he mixed it with water and continued to sell it.

The defendant's own testimony, together with the abundant proof of the fact that the liquid senoj he sold was intoxicating, would warrant his conviction.   There is no error in the judgment of the circuit court and the same is affirmed.

*Affirmed.*