# CHARLESTON.

STATE *v.* HENRY.
STATE *v.* POMEROY *et al.*
STATE *v.* BURNSIDE.

Submitted March 4, 1914. Decided April 7, 1914.

1. INTOXICATING LIQUORS—*Indictment—Proof.*

Proof of sales of "Bevo" and "Temperance Malt", without a state license therefor, if proven to be drinks of like nature to spirituous liquors, wines, porter, ale and beer, and to be intoxicating in the common acceptation of that word, may be given in evidence under an indictment charging defendant in the language of the statute, with the unlawful sale, offer and exposure for sale of spirituous liquors, wines, porter, ale and beer, and drinks of like nature; and a count charging such drinks to be intoxicating is unnecessary. (p. 73).

2. SAME—*Prosecution—Instructions—"Intoxicating Drinks."*

An instruction to the jury "that in order to make any fluid or liquid an intoxicating drink, it must be capable of producing intoxication, in the usual sense and common acceptation of the term intoxication; that is it must have in it a sufficient amount of alcohol to produce intoxication when consumed in sufficient quantities", properly propounds the law in such cases, and it was not error to reject other instructions propounding a different rule of liability. (p. 74).

3. CRIMINAL LAW—*Appeal—Verdict—Conflicting Evidence.*

This court will not on review of a judgment of conviction in such cases, disturb a verdict found by the jury on conflicting evidence as

to whether ''Bevo'' or ''Temperance Malt'' is capable of producing intoxication as defined in said instruction.   (p. 75).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Lewis County.

S. M. Burnside, Hi Henry, and Ed. Pomeroy and others were severally indicted and convicted of violating the intoxicating liquor law, and bring error.

*Affirmed.*

*Brannon & Stathers,* for plaintiffs in error.

*A. A. Lilly,* Attorney General, *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, and *Chas. P. Swint,* for the State.

MILLER, PRESIDENT:

The indictment in each case contains two counts, and are alike, except that the second count in the Burnside case, in addition to charging the unlawful sale, offer and exposure for sale of certain malt drinks commonly called ''Bevo'', adds, ''and Temperance Malt'', being ''drinks of a like kind and nature to spirituous liquors, wines, porter, ale and beer.'' The first counts charge that defendants ''without having obtained a state license therefor, as required by law, did unlawfully sell, offer and expose for sale, spirituous liquors, wines, porter, ale, beer and drinks of a like nature.''

We will consider only such of the errors assigned as are argued and relied on here, treating the others as abandoned.

The demurrers to the indictments and each count thereof were overruled. The first counts are concededly good; but it is said the second counts are bad for failure to allege in addition to what is alleged that ''Bevo'' and ''Temperance Malt'' are in fact drinks which will produce intoxication. We need not bother about this question. Our cases hold that evidence of the sale, offer or exposure to sale of any mixture or liquids which will produce intoxication, is admissible under an indictment charging, as the first count in each case does, the unlawful sale, offer and exposure for sale of spirituous liquors, wines, porter, ale, beer and drinks of a like nature. *State* v. *Good,* 56 W. Va. 215; *State* v. *Gillispie,* 63 W. Va.

152. True Judge Brannon, in *State* v. *Durr,* 69 W. Va. 251, arguendo, quotes Woollen and Thornton on Intoxicating Liquors, section 78, to the effect that if the liquor be not judicially known as a prohibited liquor, then it must be alleged that it is an intoxicating liquor; which would be true perhaps under our law, if the indictment alleged a sale of a liquor, mixture or liquid not-so judicially known as a prohibited liquor. But Judge Brannon evidently did not have the question of pleading before him in that case, and did not mean to imply that proof of the intoxicating character of the liquor sold would not be admissible under an indictment charging, as the first counts in these indictments do, a sale of spirituous liquors contrary to law. It was not his intention to overrule *State* v. *Good* and *State* v. *Gillispie, supra,* in which he had so recently concurred, holding to the contrary.

The ground of error most strongly urged is the refusal of the court, by several instructions proposed by defendants, to define "intoxication" as used in section 1, chapter 32, Code 1906, providing that "All mixtures, preparations or liquids which will produce *intoxication,* whether they are patented or not, shall be deemed spirituous liquors within the meaning of this section." Lexicographers, text writers and judicial decisions are appealed to for definition. It is apparent that the only question which could be fairly presented to the jury under the indictments and under the statute was whether the liquor sold would produce intoxication in the ordinary and common acceptation of the word, when drunk in sufficient quantities. This question we think was fully and fairly presented to the jury on the trial, particularly by defendants' instructions given by the court, in the language, or effect, following: "The Court instructs the jury that in order to make any fluid or liquid an intoxicating drink, it must be capable of producing intoxication, in the usual sense and common acceptation of the term intoxication; that is it must have in it a sufficient amount of alcohol to produce intoxication when consumed in sufficient quantities." We think this instruction sufficiently covered the case. Woollen and Thornton on Intoxicating Liquors, section 1086; *Shorb* v. *Webber,* 188 Ill. 126; *Buck* v. *Maddock,* 167 Ill. 219, 47 N. E. 208. It was not a question before the jury as to what a man's condi-

tion had to be before he could be said to be intoxicated, vary-ing often according to the circumstances and conditions under which he might be placed. The sole question before the jury on the trial was whether the liquor charged to have been un-lawfully sold would as stated in the instructions produce in-toxication. We see no error, therefore, in the instructions, or modifications of the instructions, as given on the trial.

On the question whether "Bevo" or "Temperance Malt", admitted to have been sold by defendants, would produce *intoxication*, as defined by the instructions, the evidence was very conflicting. According to some of the witnesses, they contained from 1.31 to 2.05 per cent by weight of alcohol, while in ordinary beer the percentage ranges from 3 to 4 per cent. Some of the witnesses said the human stomach could not contain enough of "Bevo" or "Temperance Malt" to produce intoxication; others that it could; some speaking from experience in the use of it thought that it would not produce intoxication. Witnesses for the defendants testified that these drinks were made of the same material, and in the same way as ordinary beer, except that they contained less alcohol, and only enough to keep them fresh a reasonable time, and not in sufficient quantities to intoxicate. On this kind of conflicting evidence the jury found against defendants, and we cannot on familiar principles reverse their finding.

The judgments below will, therefore, be affirmed.

*Affirmed.*