## RAINIER BREWING COMPANY *v.* GREAT NORTHERN PACIFIC STEAMSHIP COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 267.   Argued April 21, 1922.—Decided May 15, 1922.

1. Under Criminal Code, § 240, and the Webb-Kenyon Act, c. 90, 37 Stat. 699, a railroad company could carry intoxicating liquor into a State only when labeled as required by § 240 and by the state law.   P. 152.

2 Under the law of Washington (2 Remington's Codes & Stats., 1915, §§ 6262–1 to 6262–22,) which allowed intoxicating liquors to be brought in only in packages each containing a strictly limited quantity and bearing a permit from the State showing origin and destination of the shipment and the name of the shipper, who must also be the ultimate consignee, and which made it the carrier's

duty to cancel the permit before delivery, a railroad company was not allowed to transport such packages in carload lots billed to a transfer company at the place of destination and deliver them to the transfer company for distribution and delivery there to the several permittees.   P. 154.

270 Fed. 94, affirmed.

ERROR to a judgment of the Circuit Court of Appeals affirming a judgment rendered by the District Court for the steamship company in its action to recover from plaintiff in error, as consignor, the difference between the carload and less than carload rates on a shipment of many separate packages of beer, paid by the steamship company to the Northern Pacific Railway Company, which, as connecting carrier, transported the packages into the State of Washington and delivered them to the respective consignees.

*Mr. S. J. Wettrick* for plaintiff in error.

*Mr. Charles A. Hart,* with whom *Mr. Charles H. Carey* and *Mr. James B. Kerr* were on the brief, for defendant in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

In 1917 the plaintiff in error shipped two carloads of beer from San Francisco, consigned to the American Transfer Company at Seattle, Washington, which contained 2,565 separate packages or cases addressed to separate individuals. The shipment moved by water to Flavel, Oregon, thence by a line of railway to Portland, Oregon, and thence by the Northern Pacific Railway to Seattle. It was billed in carload lots and was given a through carload rate at point of origin, which was paid.

When the cars reached Portland the Northern Pacific Company refused to accept them, claiming that it could not lawfully carry intoxicating liquors in carload lots into the State of Washington, under the laws of the United States and of that State. Thereupon the liquor

was re-billed, each package or case separately, and the railroad company carried it to Seattle and delivered it to the individual consignees.

This suit is by the steamship company to recover the difference between the carload and the less than carload rate for the shipment. The case was tried on stipulated facts and, a jury being waived, the District Court rendered judgment for the plaintiff which was affirmed by the Circuit Court of Appeals. The parties agree that only one question is presented for decision, viz: Could the railroad company have lawfully transported the beer to Seattle and have delivered it to the Transfer Company, the consignee named in the bill of lading, in carload lots?

To answer this question involves the construction and application of § 240 of the Federal Criminal Code, of the Webb-Kenyon Act (37 Stat. 699, c. 90), and of several sections of c. 1–A of Title XLVII of the Laws of Washington entitled " Prohibition and Regulation," (Remington's Codes and Statutes of Washington, 1915, vol. II, §§ 6262–1 to 6262–22, inclusive).

Section 240 of the Federal Criminal Code provides:

" Whoever shall knowingly ship . . . from one State . . . into any other State . . . any package of or package containing any . . . intoxicating liquor of any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined not more than five thousand dollars . . ."

The Webb-Kenyon Act prohibited the " shipment or transportation, in any manner or by any means whatsoever," of any intoxicating liquors of any kind from one State to another State to be received or in any manner used in violation of any law of any such latter State (37 Stat. 699, c. 90). With these laws in force at the time, the railroad company could carry the beer into Washington only when labeled as required by § 240, supra, and in

the manner allowed by the laws of that State (*Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311), which we shall briefly consider.

Section 6262–29 of the state law, cited *supra,* limited the amount of liquor which any person, other than a common carrier, could bring into the State at one time to not more than twelve quarts of beer or one-half gallon of other liquor and even this amount could lawfully be imported only under a permit issued by a county auditor. Only one such permit could be issued to any one person in any twenty-day period (§ 6262–16).

" Any person desiring to ship or transport any intoxicating liquor " in the State must secure a permit which could be obtained only by an application to the county auditor, in which must be given under oath the name and age of the applicant, the name of the person (or corporation) from whom and the places from and to which the shipment was to be made (§ 6262–15). " Such permit shall be printed upon some shade of red paper," read the law, and must be substantially in the following form:

" STATE OF WASHINGTON ⎱ ss.
COUNTY OF ⎰

........................, residing at ............ ...................., is hereby permitted to ship or transport from ....................., in the state of:................., to ..........................., in the county of ...................., state of Washington, intoxicating liquor, to wit: .................... (insert kind and quantity, not exceeding in quantity one-half gallon of intoxicating liquor other than beer, or twelve quarts of beer or twenty-four pints of beer). This permit can only be used for one shipment and will be void after thirty days from the date of issue.

Dated this .................... day of .................... 19......

.............................................,
*County Auditor.*"

The law further required that the permit should be conspicuously affixed to each package or parcel containing

liquor brought into the State, and when so affixed it authorized any railroad company to transport not to exceed in one package or parcel the limited amount specified. It was further declared to be unlawful for any railroad company to knowingly transport such liquor in the State without having the required permit conspicuously attached to each parcel containing it and the carrier was required to so cancel the permit that it could not be used again.  It was made unlawful for any person to receive such liquor which did not have the required permit attached thereto and properly canceled.  (§§ 6262–15 and 6262–18).  Each package must be " clearly and plainly marked in large letters: ' This Package Contains Intoxicating Liquor '."  (§ 6262–20.)

This statement of the applicable law shows that the purpose of the legislation was to make the transportation of intoxicating liquors in the State of Washington as difficult, conspicuous and expensive as possible.  Only an individual could qualify to ship or receive it and it was intended that it should move only in a single package of strictly limited quantity, with a permit attached, showing its origin, destination and the name of the shipper who must also be the ultimate consignee.  A carrier could lawfully receive it for transportation only when the required permit was attached and it was made its legal duty to deface and cancel such permit before delivery so that it could not again be used.  It is stipulated that all of the statutory requirements as to packing, permits and markings were complied with as to the packages here involved, but it is argued that when so prepared for shipment the statute permitted the beer to be carried not only by a railroad company, but also by " any person, firm or corporation operating any  .  .  .   vehicle for the transportation of goods " and that, therefore, the railroad company could have discharged all of its obligations under the law by making bulk delivery of the carload lots to the Transfer Company for distribution and delivery to the permittees,

who were the ultimate and real consignees, trusting to that company to make only legal deliveries and to cancel all permits as required by the statute.

: With this contention we cannot agree.

The line of the railroad company extended to Seattle, the destination of the beer, and the state statute rendered the permittee the ultimate and real consignee. Under the general law of carriers, it was the duty of the railroad company to make delivery to the consignees, either at its station or at their residences or places of business, conformably to local custom, and the requirement of the statute that the delivering carrier must deface and cancel the permit on each package, added to the imperative character of this obligation. Delivery under the terms of the original bill of lading would have been to the Transfer Company, not as a carrier authorized by law to transport the beer on its way to destination, but to it as a terminal consignee and as such it could not possibly have qualified under the state law. No further transportation was required, only delivery remained.

The markings of the packages, required by both the federal and state law, advised the railroad company of the character of their contents and as to the real consignees and that they resided in Seattle and we think, therefore, that it was clearly its duty to refuse to carry the beer in carload bulk shipments for delivery to the Transfer Company, and that it was within its legal rights in insisting that the traffic be billed in a form which would render convenient such inspection as was necessary to insure conformity to the law in the markings of packages, and such as would render it possible for the company to make delivery to consignees with the permits canceled as the statute required.

It results that the judgment of the Circuit Court of Appeals must be

*Affirmed.*