ANTHONY COLURA, PLAINTIFF IN ERROR, v. STATE OF
NEW JERSEY, DEFENDANT IN ERROR.

Submitted December 5, 1921—Decided June 23, 1922.

On error to the Supreme Court, whose opinion is reported
in 96 N. J. L. 59.

For the plaintiff in error, *Joseph E. Stricker.*

For the defendant in error, *Edmund A. Hayes.*

PER CURIAM.

The judgment under review herein should be affirmed,
for the reasons expressed in the opinion delivered by Mr.
Justice Bergen in the Supreme Court.

KALISCH, J. (dissenting). The plaintiff in error pleaded
guilty in the Middlesex Quarter Sessions to an indictment
which charged that he did on the 23d day of October, 1920,
"unlawfully and habitually sell, offer and expose for sale
and cause and knowingly permit to be sold, offered, and
exposed for sale to H. A., R. C., L.C., C.H., and R. Van C.
by less measure than one quart certain spirituous, vinous,
malt and brewed liquors, to wit, whiskey, wine and lager
beer, without a license for that purpose first had and ob-
tained, contrary to the form of the statute in such case
made and provided," &c.

Before the plaintiff in error pleaded to the indictment
his counsel moved to quash it upon these grounds:

1. The sixty-sixth section of the Crimes act of New Jersey
contemplates the lawful sale, in certain quantities, of vinous,
spirituous and malt liquors, whereas the eighteenth amend-
ment to the federal constitution and the national prohibition
act are repugnant to such a contention in the following par-
ticulars:

*a.* Section 1 of the eighteenth amendment prohibits the sale of any intoxicating liquors.

*b.* Section 1i of the title II of the National Prohibition act defines intoxicating liquors to be any spirituous, vinous, malt or fermented liquor containing one-half of one per centum or more of alcohol by volume. By virtue of such repugnancy the state law is rendered null and void.

2. The sixty-sixth section of the Crimes act of New Jersey is not concurrent enforcement legislation, in that it is antagonistic to the act of congress (known as the National Prohibition act) in the definition of intoxicating liquors.

3. The federal constitutional amendment, and the act of congress invalidates the licensing laws of New Jersey and hence the gravamen of the indictment that the defendant failed to obtain a license before selling spirituous, vinous and malt liquors is not violative of any laws of the State of New Jersey, and does not allege a crime."

The motion to quash was denied and thereupon the plaintiff in error pleaded guilty, and a motion for an arrest of judgment was then made on the grounds which were advanced on the motion to quash. The motion in arrest of judgment was also denied, and judgment having been given against the defendant, error was assigned on the record and the cause was removed, by writ of error, to the Supreme Court for review, where the judgment was affirmed, and is now, on writ of error, before us for review.

This court affirmed the judgment of the trial court on the opinion of the Supreme Court. I find myself unable to concur. The reason for my dissent from the majority view is that it seems to me to be quite obvious that section 66 of the Crimes act, the basis of the indictment and judgment against the plaintiff in error, was annulled by the eighteenth amendment to the constitution of the United States and the National Prohibition act. The suggestion that the present case falls within the control of the decision of the United States Supreme Court in *Vigliotti* v. *The Commonwealth of Pennsylvania,* decided at the October term, 1921, is without force. In that case, the Supreme Court, speaking through

Mr. Justice Brandeis, held that the Brooks law of the State of Pennsylvania was not antagonistic to the eighteenth amendment to the constitution of the United States and the National Prohibition act.

In view of that decision the majority of this court was led to affirm the judgment on the opinion of the court below, on the theory that the provisions of section 66 *sub judice* were analogous in character to those of the Brooks law. But I am unable to find any such analogy. A comparison between the two acts will show radical differences in their important features. See *Commonwealth* v. *Vigliotti*, 115 *Atl. Rep. (Pa.)* 20, where the various sections of the Brooks law germane to the question raised here are set out and considered by the court. Mr. Justice Brandeis, in commenting upon the Brooks law, says: "The Brooks law as construed by the courts of the state prohibits every sale of spirituous liquor, without a license, excepting only such sales as are made by druggists, and these are forbidden to sell intoxicating liquors, except on prescription of a regular physican. The law applies however small the percentage of alcohol and although the liquor is not intoxicating. It applies to liquors sold for industrial uses. It does not purport to confer upon anyone anywhere the right to a license; nor does it authorize the sale of liquor in any city or county having a special prohibitory law * * *. "* * * The Brooks law as thus construed does not purport to authorize or sanction anything which the eighteenth amendment or the Volstead act prohibits. And there is nothing in it which conflicts with any provision of either."

A plain reading of the provisions of section 66 of the Crimes act will disclose that all the distinguishing features which tend to make the Brooks law a prohibition enforcement act are not only entirely absent from section 66, but we find in the latter every element that goes toward sanctioning the sale of intoxicating liquors.

Section 66 of the Crimes act (2 *Comp. Stat., p.* 1767), reads: "It shall not be lawful for any person, without license

for that purpose first had and obtained, to sell or permit to be sold, any vinous, spirituous or malt liquors, wine, rum, gin, brandy or other ardent spirits, or any composition of which any of the said liquors shall form the chief ingredient, except such as shall be compounded and intended to be used as medicine, by less measure than one quart, or any mixed liquors by less measure than five gallons."

Thus it is self evident that this act does not tend to enforce prohibition. The legislative design was not to that end. The prohibitory clause of the section was originally embraced, in substance, in the first section of an act entitled "An act to regulate the sale of spirituous, vinous, malt and brewed liquors, and to repeal an act to regulate the sale of intoxicating and brewed liquors, passed March 7th, 1888." See *Pamph. L.* 1889, *p.* 77. This law repealed the statute of 1888 which, in terms, provided for local option and thus tended to enforce prohibition. *Pamph. L.* 1888, *pp.* 142, 146, § 7.

By the Revision of 1898, the revisers eliminated sections 1 and 2 from the statute of 1889 and transplanted them in the field of the Crimes act, with some changes, manifestly for the purpose of more appropriate classification, leaving, however, as will appear by comparing the provisions of the two sections, the main features of sections 1 and 2 of the act of 1889, unimpaired.

The reasoning of the Supreme Court in upholding the validity of the judgment, in the present case, was based entirely upon the erroneous assumption that the act of 1888, with its prohibitive features, was still in force, and that the case of *Paul* v. *Gloucester,* 50 *N. J. L.* 585, decided at the June term of 1888, and which declared the act to be constitutional, was controlling in the matter under discussion.

Succinctly stated the situation here is, that at the time of the commission of the alleged offence, the statute of 1889 and not that of 1888 was on our statute book, and to the extent that that statute was antagonistic to the eighteenth amendment and the Volstead act, it was abrogated.

A fair reading of the statute of 1889 demonstrates that it is purely a licensing act, conferring upon municipalities and the Courts of Common Pleas authority to grant licenses to sell by less measure than a quart ardent spirits to be drunk on the premises, &c., and authorizing the fixing of license fees to be paid, &c.  Sections 1 and 2 of this act, as has already been observed, denounce the selling, &c., of ardent spirits, &c., without a license to be a misdemeanor. It was these two sections which were moulded into one and which became section 66 of the Crimes act.  It is quite obvious that its original purpose was to enforce the licensing laws which in effect permit the sale and distribution of vinous, spirituous and malt liquors.  But where the sale is of a quart or more, no license seems to have been required. Now it is manifest that unless a penalty was attached to selling in less measure than a quart liquors to be drunk upon the premises, without a license it would have led to a speedy growth of tippling houses throughout the state. The penalty attached to the licensing act was intended also to enforce the revenue features thereof and to protect the keepers of inns and taverns and of saloons who paid license fees, from unfair and unjust competition.  To me it seems, therefore, incomprehensible how it can be maintained with any show of reason that section 66 of the Crimes act, the sole purpose of which was to aid in enforcing the licensing act of 1889, is not antagonistic to the eighteenth amendment and the National Prohibition act.

The question here is not whether the legislature had power to declare selling liquors without a license to be a crime; that it had such, in the exercise of its police power, cannot be successfully refuted.  But when the eighteenth amendment and the Volstead act became the supreme law of the land the exercise of such power, so far as licensing the sale of liquor above one-half of one per centum, became extinct.  What power is now left to the legislature concerning the licensing and sale of liquor springs from the eighteenth amendment, and in the exercise of such power,

the legislature must conform with such amendment and the Volstead act, and not be antagonistic to either. Now that is not the case here. Section 66 concerns itself only in making sales of liquor in less measure than a quart, without a license, a crime, and exempts sales of one quart or more, without a license, from the application of the statute. So it is quite plain that this legislation does not generally prohibit the sale of liquor or beer, but limits the quantity of such liquor and beer, requiring a license before it can be lawfully sold. This is apparent from the allegations in the indictment and the statute upon which it is based.

The maxim still holds good that where the reason of the law ceaseth, the law itself ceases. In order to construe the meaning of the statute recourse must be had to the old law, the mischief and the remedy. All these may be gleaned from a perusal of the licensing act of 1889. The phrase, in the indictment and statute, "without a license," has reference to the licensing act of 1889, the provision of which unequivocally contemplate the sale of intoxicating liquors. That statute with its licensing features has become extinct, as it never was the legislative intent to make the sale of intoxicating liquor a crime when such sales could be licensed, it follows that when the licensing statute became inoperative, the sixty-sixth section which was originally a part of it and enacted for the purpose of enforcing the licensing act became inoperative also.

For the reasons given, I vote to reverse the judgment.

*For affirmance*—THE CHANCELLOR, SWAYZE, PARKER, MINTURN, BLACK, WHITE, WILLIAMS, GARDNER, VAN BUSKIRK, JJ. 9.

*For reversal*—KALISCH, J. 1.