McCORMICK & CO., INC. ET AL. *v.* BROWN, STATE COMMISSIONER OF PROHIBITION OF WEST VIRGINIA, ET AL.

No. 599. Argued April 22, 1932.—Decided May 16, 1932.

132

*Messrs. Philip C. Friese* and *H. D. Rummel* for appellants.

*Messrs. W. G. Brown* and *R. Dennis Steed,* Assistant Attorney General of West Virginia, with whom *Mr. H. B. Lee,* Attorney General, was on the brief, for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This suit was brought by nonresident manufacturers and wholesale dealers to restrain state officers of West Virginia from requiring the complainants to obtain permits from the State Commissioner of Prohibition, and to pay an annual license fee of $50, before shipping certain products into the State to purchasers there for resale.

The bill alleged that, while these products contained ethyl alcohol, they were used and usable solely for medicinal, mechanical, toilet, and culinary purposes, and were not intoxicating liquors or fit for beverage purposes within the meaning of the laws of the United States; that the products were covered by permits issued to the complainants respectively under the National Prohibition Act; and that the shipment and sales in question were to dealers in West Virginia holding state permits. The bill charged that the requirements of the state officers, purporting to act under state legislation, constituted an interference with interstate commerce in violation of the commerce clause of the Federal Constitution, and that the complainants were without remedy at law. In their answer, defendants (appellees) denied that the products in question were used and usable solely for the purposes

alleged and that none of the products were "intoxicating liquors" and that they were non-intoxicating in fact; and, while admitting that the complainants held permits under the National Prohibition Act, defendants asserted the validity of the state laws and regulations by which state permits and the payment of the license fee were required.

The District Court, composed of three judges (Jud. Code, § 266, U. S. C., § 380) heard and denied, upon the pleadings and affidavits, an application for an interlocutory injunction. Upon final hearing no further evidence was introduced and from the final decree, dismissing the bill, this appeal has been taken.

The Constitution of West Virginia (Art. VI, § 46) prohibits "the manufacture, sale and keeping for sale of malt, vinous or spirituous liquors, wine, porter, ale, beer or any intoxicating drink, mixture or preparation of like nature," except "such liquors for medicinal, pharmaceutical, mechanical, sacramental and scientific purposes" and "denatured alcohol for industrial purposes," dealings in which are permitted under legislative regulations. The legislature was directed to enact such laws as might be necessary to carry these provisions into effect.

The legislative act now in force is Chapter 60 of the West Virginia Official Code (1931). The definition of "liquors" in section one of Article one embraces "all liquids, mixtures or preparations, whether patented or not, which will produce intoxication."[1] By section four, sell-

---

[1] "§ 1. The word 'liquors,' as used in this chapter, shall be construed to embrace all malt, vinous or spirituous liquors, wine, porter, ale, beer or any other intoxicating drink, mixture or preparation of like nature; and all malt or brewed drinks, whether intoxicating or not, shall be deemed malt liquors within the meaning of this chapter; and all liquids, mixtures or preparations, whether patented or not, which will produce intoxication, and all beverages containing one-half of one per cent or more of alcohol, by volume, shall be deemed spirituous liquors, and all shall be embraced in the word 'liquors,' as used in this chapter."

ing or soliciting or receiving orders for "any liquors" is penalized, "except as hereinafter provided"; and "in case of a sale in which a shipment or delivery of such liquors is made by a common or other carrier," the sale is deemed to be made in the county of delivery.[2] Exceptions, found in section five,[3] include sales of wine for sacra-

[2] "§ 4. Except as hereinafter provided, if any person acting for himself, or by, for or through another, shall sell, keep, store, offer, or expose for sale, or solicit or receive orders for, any liquors, or absinthe or any drink compounded with absinthe, he shall be deemed guilty of a misdemeanor for the first offense hereunder, . . . and in case of a sale in which a shipment or delivery of such liquors is made by a common or other carrier the sale thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee, his agent or employee."

[3] "§ 5. The provisions of this chapter shall not be construed to prevent . . . the manufacture and sale of pure grain alcohol, at wholesale, to druggists, hospitals, sanitariums, laboratories and manufacturers for medicinal, pharmaceutical, scientific and mechanical purposes, or of wine for sacramental purposes by religious bodies, or to prevent the sale and keeping and storing for sale by druggists of wine for sacramental purposes by religious bodies, or any United States pharmacopoeia or national formulary preparation in conformity with the West Virginia pharmacy law, or any preparation which is exempted by the provisions of the national pure food law; or to prevent the sale by druggists, through pharmacists, of pure grain alcohol for medicinal, scientific, pharmaceutical and mechanical purposes; or to prevent the use of such alcohol by physicians, dentists and veterinarians in the practice of their profession; or to prevent the medication and sale of pure grain alcohol according to formulae and under regulations of the national prohibition act; . . . *Provided,* That no one shall manufacture, sell, keep for sale, purchase or transport any liquors, as defined in section one of this article and as herein excepted, without first obtaining a permit from the commissioner of prohibition so to do. Forms of application and permits shall be prepared by the commissioner and a fee for each permit issued shall be collected by him as follows:

"(a) All manufacturers of liquors and wholesale dealers therein shall pay a fee of fifty dollars for each permit; (b) all purchasers in wholesale quantities of ethyl alcohol in any form, whether pure, medi-

mental purposes or of " any United States pharmacopeia or national formulary preparation in conformity with the West Virginia pharmacy law, or any preparation which is exempted by the provisions of the national pure food law," and this section contains a proviso that no one " shall manufacture, sell, keep for sale, purchase or transport any liquors, as defined in section one of this article and as herein excepted, without first obtaining a permit from the commissioner of prohibition so to do." Permits are to be issued for the calendar year, and fees for each permit are prescribed, being fifty dollars in the case of manufacturers and wholesale dealers, ten dollars in the case of purchasers in wholesale quantities of ethyl alcohol, whether pure, medicated or denatured, for use as provided, and two dollars in the case of purchasers, except licensed druggists, in wholesale quantities of liquors, as defined in section one, for sale at retail. By section nine, common carriers are forbidden to carry into the State, or within the State, intoxicating liquors except " pure grain alcohol and wine, and such preparations as may be sold by druggists for the special purposes and in the manner as set forth in section five." [4] Section eleven makes it unlawful

cated, or denatured, for use as herein provided, shall pay a fee of ten dollars for each permit; (c) all purchasers in wholesale quantities of liquors as defined in section one of this article for sale at retail, except duly licensed druggists, shall pay a fee of two dollars for each permit; . . .

" Permits shall be issued for the calendar year and shall expire on the thirty-first day of December next following the issuance thereof. . . . *Provided further*, That such liquors shall be manufactured, sold, kept for sale, transported and used under permits issued by the federal prohibition commissioner and in accordance with regulations issued in pursuance of the national prohibition act."

[4] The provision in Section 9 is as follows: " *Provided further*, That no common carrier, for hire, nor other person, for hire, or without hire, shall bring or carry into this State, or carry from one place to another within this State, intoxicating liquors for another, even when

for nonresident dealers to sell to persons within the State intoxicating liquors or any of the preparations described, when they " are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of the prohibition laws of this State "; and in case of shipment or delivery by a carrier, the county in which the delivery is made is to be taken as the place of sale.[5]

Section three of Article two of Chapter 60 provides that the manufacture and sale of " liquors " by wholesale druggists and other dealers shall be under the supervision of the commissioner of prohibition and governed by the regulations he may from time to time prescribe. The commissioner's regulations place nonresident manufacturers in the category of " wholesale dealers " and define the business of such dealers as " that of selling at wholesale ethyl alcohol in any form . . . and wine as permitted and supervised by the Federal Government; or selling . . . any liquid, mixture, or preparation . . . which will produce intoxication, or coming within the definition of

intended for personal use; except a common carrier may, for hire, carry pure grain alcohol and wine, and such preparations as may be sold by druggists for the special purposes and in the manner as set forth in section five of this article."

[5] " § 11. . . .

" It shall be unlawful for any nonresident vendor, dealer or other person to sell or furnish any malt, brewed, vinous, or fermented liquors, intoxicating liquors, or any mixture, compound or preparation, whether patented or not and whether intoxicating or not, to any person, corporation or firm within the territory of this State, when such liquors, mixture, compound or preparation, or any of them, are intended by any person interested therein to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of the prohibition laws of this State; and in case of such sale or furnishing in which a shipment or delivery of such liquors is made by a common or other carrier, the sale and furnishing thereof shall be deemed to be made in the county wherein the delivery thereof is made by such carrier to the consignee, his agent or employee."

' liquors ' in section one " of the statute. These dealers, it is provided, upon obtaining a permit from the state commissioner, may sell such liquors at wholesale for medicinal, pharmaceutical, scientific and mechanical purposes to persons holding permits to purchase. The regulations also classify alcoholic preparations, as those regarded as beverages, the sale of which is forbidden, and those which comprise articles having a recognized legitimate use and which can be sold under permits, the latter including a large variety of preparations with a described alcoholic content, such as proprietary medicines, tonics, cordials, elixirs, lotions, extracts and flavors, and various compounds bearing trade names.

Complainants' products fall within these regulations. They contain ethyl alcohol ranging, according to the allegation of the bill as to the foodstuffs and toilet articles of one of the complainants, " from four per cent. to ninety per cent. ethyl alcohol by volume." There is no charge that applications by complainants for permits have been denied. On the contrary, the bill of complaint alleged that complainants have either procured the required permits from the state commissioner, on the payment of the prescribed fee, or " have refused to procure such permits and refrained from shipping said products into said State." The question is simply one of the authority of the state officers to demand that state permits be obtained.

The District Court found that the products in question are " liquors " within the meaning of the state statute, and we see no ground for a contrary conclusion. *State* v. *Muncey,* 28 W. Va. 494; *State* v. *Good,* 56 W. Va. 215; 49 S. E. 121; *State* v. *Durr,* 69 W. Va. 251; 71 S. E. 767; *State* v. *Henry,* 74 W. Va. 72; 81 S. E. 569. Nor do we think that the regulations of the commissioner go beyond the authority which the statute confers. No state decision to that effect has been cited, and examination of the statutory provisions we have quoted gives no support to

the contention that the commissioner has misconceived his duty. On the application for injunction the complainants presented affidavits to show that their products, as required by Federal law and regulations, were unfit for beverage purposes and that consumption of them as a beverage " would involve serious gastric irritations or disorders, or nausea, and, in some cases, if persisted in, serious illness," and that the products were sold strictly " for medicinal, toilet, and culinary purposes." Defendants denied the unfitness for beverage use, and, in support, submitted an affidavit of the chemist who had been employed by the state department to examine preparations covered by the commissioner's regulations, including products of this sort submitted by one of the complainants on its application for a state permit. This witness testified that these various preparations, falling within the abovementioned classes of the regulations, are such as " will produce intoxication and drunkenness " and he based this statement on the " alcoholic content, the potability and the physiological effect of the final product, and upon his actual experience and observation that said preparations are intoxicating in fact."

We may lay the controversy of fact on one side, so far as it relates to the particular products of complainants, as the question is not merely that of the normal uses and purposes of these preparations which have alcoholic content and come within the state law, but whether, in view of that content and of possible abuses, the State has the power to put the sale of such products under the prescribed administrative supervision. There is no basis for objection because of any arbitrariness in the State's requirements, as they are appropriately directed to the enforcement of its prohibitory legislation. *Purity Extract Co.* v. *Lynch,* 226 U. S. 192, 204; *Eberle* v. *Michigan,* 232 U. S. 700, 706; *Vigliotti* v. *Pennsylvania,* 258 U. S. 403, 407. The question before us is thus the narrower one

whether the State's authority extends to the complainants' transactions in the light of their interstate character and of the Federal legislation asserted to be applicable.

Prior to the adoption of the Eighteenth Amendment, the Congress, exerting its constitutional power of regulation, had prohibited the movement in interstate commerce into any State of intoxicating liquors for purposes prohibited by the state law. The Webb-Kenyon Act[6] (Mar. 1, 1913, c. 90, 37 Stat. 699; U. S. C., Tit. 27, § 122). See, also, the Wilson Act (Aug. 8, 1890, c. 728, 26 Stat. 313; U. S. C., Tit. 27, § 121) and the Reed Amendment (Mar. 3, 1917, c. 162, § 5, 39 Stat. 1069; U. S. C., Tit. 27, § 123). With direct application to the prohibition law of West Virginia (the predecessor of the present statute and having a similar definition of " liquors," West Virginia Laws, 1913, c. 13), this Court held that the purpose of the Webb-Kenyon Act " was to prevent the immunity characteristic of interstate commerce from being used to permit the receipt of liquor through such commerce in States contrary to their laws, and thus in effect afford a means by subterfuge and indirection to set such laws at

---

[6] The Webb-Kenyon Act is entitled "An Act Divesting intoxicating liquors of their interstate character in certain cases," and provides: " That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited."

naught." The Act was said to operate " so as to cause the prohibitions of the West Virginia law against shipment, receipt and possession to be applicable and controlling." *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, 324. See, also, *Seaboard Air Line Ry.* v. *North Carolina,* 245 U. S. 298, 303, 304; *United States* v. *Hill,* 248 U. S. 420, 424, 425; *Williams* v. *United States,* 255 U. S. 336; *Rainier Brewing Co.* v. *Great Northern Co.,* 259 U. S. 150, 152. The appellants do not urge, and there would be no ground for such a contention, that either the Eighteenth Amendment or the National Prohibition Act had the effect of repealing the Webb-Kenyon Act. The Congress has not expressly repealed that Act, and there is no basis for an implication of repeal. The Eighteenth Amendment and the National Prohibition Act have not superseded state prohibitory laws which do not authorize or sanction what the constitutional amendment prohibits. *Vigliotti* v. *Pennsylvania, supra.* Such laws derive their force not from that amendment but from power originally belonging to the States and preserved to them by the Tenth Amendment. *United States* v. *Lanza,* 260 U. S. 377, 381; *Hebert* v. *Louisiana,* 272 U. S. 312, 315; *Van Oster* v. *Kansas,* 272 U. S. 465, 469. As the prohibitory legislation of the States may thus continue to have effective operation, there is no reason for denying to the Webb-Kenyon Act its intended application to prevent the immunity of transactions in interstate commerce from being used to impede the enforcement of the States' valid prohibitions.

The appellants contend, however, that the products in question are not " intoxicating liquors " within the meaning of the Webb-Kenyon Act. They insist that this term as used in that Act must be defined in the light of the terms of the subsequent National Prohibition Act. They refer to the exemptions in the later Act with respect to such articles as medicinal and toilet preparations, pro-

prietary medicines and flavoring extracts, when manufactured and prepared for the market under required permits. U. S. C., Tit. 27, § 13. But these provisions were not in contemplation at the time of the passage of the Webb-Kenyon Act and cannot operate to restrict the natural significance of the terms of that Act as they were adopted by the Congress and have been left unrepealed. That Act did not attempt to establish a definition of intoxicating liquors. It expressly referred to the prohibitory laws of the States, the enforcement of which it was intended to aid. The Congress undoubtedly recognized, as this Court had decided, that the State could prohibit the sale of liquor absolutely or conditionally. It could prohibit sale as a beverage and permit sale for medicinal and like purposes. It could prohibit sale by merchants and permit it by licensed druggists. *Eberle* v. *Michigan, supra; Kidd* v. *Pearson,* 128 U. S. 1, 19; *Rippey* v. *Texas,* 193 U. S. 504, 509; *Crane* v. *Campbell,* 245 U. S. 304, 307; *Vigliotti* v. *Pennsylvania, supra.* If preparations by reason of their alcoholic content would be intoxicating, and could be used for beverage purposes, unless so treated as to render them unfit for such purposes, the States were clearly at liberty to insist, within the range of their authority, upon being satisfied that such preparations had been so treated and to establish administrative control to that end. *Seaboard Air Line Ry.* v. *North Carolina, supra.* When the definition of intoxicating liquors, as set forth in state legislation and as applied to such preparations, is not an arbitrary one—and it cannot be regarded as arbitrary in the instant case—the Webb-Kenyon Act must be taken as referring to the liquors which the state legislation describes, or the plain purpose of the Act would be frustrated. The same reasons which lead to the conclusion that the Webb-Kenyon Act was not repealed by the National Prohibition Act, compel the view that the

scope of the application of the former was in no way limited by the latter.

The appellants make the further point that the Webb-Kenyon Act applies only where there is an intent to violate the laws of the State into which the shipment is made. The Act prohibits the shipment or transportation of intoxicating liquor into a State when it " is intended, by any person interested therein, to be received, possessed, sold, or in any manner used . . . in violation of any law of such State." The argument is that no intent to violate the laws of West Virginia can be imputed to the appellants. It is said that they ship their products only to licensed dealers in West Virginia, that is, to those who are authorized by the state commissioner of prohibition " to receive, store, and sell the same." The short answer is that the state law does not make the permits issued to local dealers a substitute for the permits required of wholesale dealers. If the provisions of the state law, and the regulations under it, which expressly require state permits for sales by wholesale dealers of the products in question, are valid, it necessarily follows that sales by appellants of these products without such permits would be in violation of the state law within the meaning of the Webb-Kenyon Act. The appellants in making the sales are obviously interested persons, and the shipment of their products into the State for the purpose of there consummating their sales without the described permits would fall directly within the terms of that Act.

In determining the ultimate question of the validity, not simply of the State's prohibitory legislation in its general features, but, in particular, of its requirement of permits as to products for which federal permits have been issued, we need only refer to the criterion established by the decisions of this Court. While state legislation cannot give validity to acts prohibited by the Eighteenth

Amendment, that legislation may provide additional instruments to make prohibition effective. That the State may adopt appropriate means to that end was expressly provided in section two of the Amendment in declaring that "The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation." *National Prohibition Cases*, 253 U. S. 350, 387; *Vigliotti* v. *Pennsylvania, supra.* The Court said in *United States* v. *Lanza, supra:* "In effect the second section of the Eighteenth Amendment put an end to restrictions upon the State's power arising out of the Federal Constitution and left her free to enact prohibition laws applying to all transactions within her limits. To be sure, the first section of the Amendment took from the States all power to authorize acts falling within its prohibition, but it did not cut down or displace prior state laws not inconsistent with it. . . . We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment. Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other." See, also, *Hebert* v. *Louisiana, supra.* The mere fact that a state statute has broader scope than a provision of the National Prohibition Act upon the same subject does not affect its validity. *Van Oster* v. *Kansas, supra.* Different and higher penalties may be provided by the state law. *Edwards* v. *Georgia,* 150 Ga. 754; 105 S. E. 363, affirmed 258 U. S. 613; *Chandler* v. *Texas,* 89 Tex. Cr. 306; 232 S. W. 317, affirmed 260 U. S. 708. State legislation imposing punishment for the sale of liquor without a state license may be enforced. *Molinari* v. *Maryland,* 141 Md.

565; 119 Atl. 291, affirmed 263 U. S. 685, 686; *Weisengoff* v. *Maryland,* 143 Md. 638; 123 Atl. 107, affirmed 263 U. S. 685, 686; *Colora* v. *New Jersey,* 97 N. J. Law 316; 117 Atl. 702, affirmed 267 U. S. 576.  In *Idaho* v. *Moore,* 36 Idaho 565; 212 Pac. 349, affirmed 264 U. S. 569, Moore was convicted of having intoxicating liquor in his private dwelling in violation of the state law, notwithstanding the stipulation that his possession was " permitted by and lawful under the provisions of section 33 of the National Prohibition Act."  U. S. C., Tit. 27, § 50.  See, also, *North Carolina* v. *Campbell,* 182 N. C. 911; 110 S. E. 86, affirmed 262 U. S. 728; *Barnes* v. *New York,* 266 U. S. 581; *Colonial Drug & Sales Co.* v. *Western Products Co.,* 54 F. (2d) 216.

Applying the principle thus repeatedly declared, we are of the opinion that the provisions of the National Prohibition Act relating to the issue of permits did not supersede the authority of West Virginia to require state permits, as in the instant case, in the appropriate enforcement of its valid legislation.                    *Decree affirmed.*