# ROCKINGHAM,

## DECEMBER TERM, A. D. 1851.

---

ELKINS v. THE BOSTON & MAINE RAILROAD CO.

A common carrier is a person who undertakes to transport from place to place, for hire, the goods of such as choose to employ him.

In an action against a railroad company, it was alleged that they were common carriers of goods by the passenger trains of cars, and there was evidence that twice, within two years, the company had carried goods by these trains, but the bills did not state that they were thus carried, nor was there any understanding that they were to go by these trains. *Held,* that the presumption was that the goods were thus transported for the temporary convenience of the company, and that the evidence did not tend to prove that they intended to hold themselves out to the world as common carriers of goods by these trains.

Evidence that the conductor of a railway passenger train had carried goods and eggs to market for an individual, does not tend to show that the company are common carriers of goods by such trains, where it does not appear that he rendered such services by virtue of any authority derived from the company, or that any compensation was received for them, either by the company or himself.

One instance of the transportation of goods by a railway passenger train, and of the payment of freight for them, does not tend to prove that the company exercise the business of common carriers by such trains, as a public employment, or undertake to carry goods in such way for persons generally; and is not competent evidence to be submitted to the jury as tending to prove them to be common carriers of goods by such trains.

The plaintiff delivered certain articles to a ticket master to be transported by a passenger train, and requested him to label them, which he promised to do, but which it did not appear was done. It was neither his duty nor the duty of the company to affix labels upon articles. *Held,* that as there was nothing to indicate the owner's name, or the place to which the articles were to be sent, and as the promise of the ticket master did not bind the company, they were not liable for the loss of the articles.

CASE. The declaration alleged that the defendants were common carriers — that on the twenty-first day of April, 1847, the plaintiffs delivered to their agent an overcoat and umbrella, to be carried from Andover to Exeter, but that the defendants did not carry them, and that they were lost, &c.

At the trial, upon the general issue, the plaintiff offered evidence that he tied the articles together and requested the ticket master at Andover to put a label upon them and send them to Exeter by the next passenger train, which he said he would do. They were left by the plaintiff in the common room at the depot. It did not appear that any label was put upon them, or that anything was paid for their transportation. The plaintiff made no enquiry for them at Andover afterwards. Enquiry was made for them at the depot at Exeter, but they could not be found.

John Dow of Atkinson, a witness for the plaintiff, testified that the defendants had carried English goods and leather for him by the passenger train, once in the last six months and twice within the last two years, when he was not with them — the bills of these goods, however, he thought did not state that they were carried by the passenger train. The conductor had always taken charge of articles for him, and he had sent eggs by him to market, but his goods generally went by the freight train. He had sometimes paid for extra baggage when he travelled by the passenger train, and he once sent a trunk by that train, in charge of Wadleigh, the conductor. Another witness testified that in 1846, he received some bags by the passenger train from Parsonsfield, Maine, for which he paid freight to the baggage master. The defendants contended that they were not liable as common carriers by the passenger train, and had never held themselves out as such, but that all persons in their employ were forbidden to transport goods by that train, nor had they ever been accustomed so to do. Sawyer, the ticket master at Andover, testified that it was no part of his duty to label articles left at the depot there ; that his instructions were to receive none unless legibly marked, and that when they are left he usually delivers them to the express agent. Also, that the printed rule of

of the company, of the first of January, 1850, was acted upon for some time before that date.

Henry R. Hall testified that he had been in the employ of the defendants for eight years, and was freight agent from 1844 to 1847 — that their rule, and the instructions from the superintendent were not to send articles by the passenger train, unless the owner was present and accompanied them. If the owner was not with them, they were sent to the freight depot, and he never knew them to be sent without the owner; but he had sometimes known the conductor to take charge of them when the owner went with them, on receiving double the freight by the freight train. When articles were not marked, they were retained. They took no responsibility about marking goods, although he had sometimes marked them, as a favor to the owner. He knew no rule that would justify a depot-master in sending articles by the passenger train without the owner. The practice had always been in accordance with the printed rule. The ticket-master at Exeter testified that for five years past, the instructions had been not to send articles by the passenger train. Certain printed rules of the company, made public on the first of January, 1850, were read in evidence, of which the defendants relied on the following :

"Baggage must be accompanied in the same train by its owner, and when not so accompanied, no agent of the company is authorized to put it on board the train, and the company will not hold themselves liable as common carriers in regard to it."

"All articles of freight must be plainly and distinctly marked, or they will not be received by the company."

The plaintiff introduced and relied upon the following rules of the company, made public at the same time :

"All baggage must be delivered to the baggage-master or other person authorized to receive it, before the passenger takes his seat in the cars."

"The liability of the company as common carriers, in regard to baggage, and other articles carried on a passenger train, will not commence till such baggage or other articles are put or received on board the train, and the same liability will terminate

when such baggage or other articles are unladen from the train at their place of destination.

" Baggage will not be taken to include money, merchandize or other articles than those of personal use, and when of higher value than the highest sum advertised by the company, notice must be given of that part, and an extra price paid, or the company will not hold itself liable beyond that amount.

" The company will not hold itself liable for any valise, package, or other articles of personal property taken by the passenger with him into the cars, or carried at all upon a passenger train, unless delivered to the baggage master, or other person authorized to receive and take charge of articles, and no agent of the company is allowed, to take charge of specie, drafts, bank bills, or other small articles of great value, to go by a passenger train, unless it be specially advertised to the contrary.

" The company expressly reject any liability for the care of articles in the keeping of express agents who pass over their road under special contract, whether any such limitation of the company's liability is published in express agent's advertisements or not."

A verdict was taken for the defendants, subject to the opinion of the court, whether there was any evidence competent to be submitted to the jury, to prove the defendants to be common carriers by the passenger train ; upon which judgment is to be rendered, or it is to be set aside and a new trial granted, as the court may direct.

*Wood*, for the plaintiff.

1.   It appears by the testimony of John Dow and one other witness, that the defendants had carried goods for them by the passenger train, which was evidence competent to have been submitted to the jury.   Angel on Com. Car., §§ 69, 70, 78, 82 ; *Bennett* v. *Dutton*, 10 N. H. Rep., 486.

2.   It appears by the testimony of Dow, that the conductor had always taken charge of articles for him ; which was competent evidence in this case, as it is to be understood he acted for the defendants, unless notice were given to the contrary.   *Allen* v. *Sewell*, 2 Wend. Rep., 327.

3.  It also appears, that the company, by their rules, hold themselves out as ready to carry other articles, by the passenger train, besides passengers and their baggage ; which was competent evidence to be submitted to the jury, and was also sufficient to constitute the defendants common carriers.  *Gordon* v. *Hutchins,* 1 Watts & Serg., 285; 2 Kent's Com., 598; *Dwight* v. *Brewster,* 1 Pick. Rep., 50 ; *Moses* v. *Norris,* 4 N. H. Rep., 304 ; Angel on Com. Car., § 70 ; *Bean* v. *Sturtevent,* 8 N. H. Rep., 146; 3 Wend., 161 ; 2 Wend., 327 ; *Bennett* v. *Dutton,* 10 N. H. Rep., 481.

4.  It appears by the case and is admitted by the defendants, that the defendants carried goods by their passenger trains when requested, if the owner went with them ; by which the plaintiff contends—the defendants incur the liabilities of common carriers, (cases before cited,) and if the defendants do not intend to incur that liability, when the owner does not accompany the goods, they should give notice to that effect, which should be brought home to the owner.  2 Wend., 327.

5.  The defendants' acting under one name and act of incorporation, both in carrying goods and passengers, and in running passenger trains and freight trains, having one name only, and under that name advertising to carry goods as well as freight, are liable for goods sent by the passenger train, though they divide their transportation into two parts, one part to go by a passenger train, the other by a freight train; although that were strictly adhered to, unless the owner is notified to the contrary.  2 Wend., 327 ; 10 Met., 474 ; Angel on Com. Car., page 104, and note Ib., 106.

6.  All instructions or restrictions which can limit the defendants' liability, should be made known by notice and brought home to the owner.  2 Greenl. Ev., § 216 ; Angel on Com. Car., §§ 54, 247, 248, 249.

7.  The defendants cannot limit their common law liabilities. *Bennett* v. *Dutton,* 10 N. H. Rep., 481; *Company* v. *Merchant's Bank,* Angel on Com. Car., Appendix.

8.  The questions, whether the defendants are in the practice of carrying goods by the passenger train, or hold themselves out

as ready to carry goods by the passenger train, for such as choose to employ them, so as to constitute them common carriers, are for the jury and not the court to decide. *Thomas* v. *Boston & Providence Railroad*, 10 Met., 472 ; *Dwight* v. *Brewster*, 1 Pick. 50 ; Angel on Com. Car., § 82, cases cited in the note ; *Littlejohn* v. *Jones*, 2 McMullan's Rep., 365.

In the last case it is expressly decided, that the questions whether the defendant so used his ferry as to induce the common belief that he conveyed passengers and goods for compensation, and whether he held himself out to the world as ready at all times to convey across the stream such as travelled that road for the customary rates, or the contrary, are for the jury to decide.

Upon which authorities, the last point which arises in this case, and which was discussed on the trial of this action, ruled to the contrary by the court, is well settled, according to the understanding the plaintiff's counsel has of the case cited.

*Stickney* and *Tuck*, for the defendants.

The question raised in this case is, whether the evidence was competent to be submitted to the jury to prove the defendants to be common carriers.

To settle that question it becomes necessary to inquire what constitutes a common carrier.

Story, in his Com. on Bail., § 495, lays down this definition of a common carrier :

"It is not every person, who undertakes to carry goods for hire, that is deemed a common carrier."

"To bring a person within the description of a common carrier, he must exercise it as a public employment—he must undertake to carry goods for persons generally, and he must hold himself out as ready to engage in the transportation of goods for hire as a business, not as a casual occupation *pro hac vice*."
"A common carrier has, therefore, been defined to be one who undertakes for hire or reward to transport the goods of such as choose to employ him, from place to place."

In *Sheldon* v. *Robinson*, 7 N. H. Rep., 157, our court adopt-

ed this definition of a common carrier. The defendant was sued as a common carrier, for not delivering money which he received of the plaintiff, to be carried from Boston to Portsmouth. The defendant was a stage driver, in the employ of a stage company between Boston and Portsmouth, and was in the habit of carrying packages of money for hire, on his own account, between those places, for all persons who employed him. It was held that he was not a common carrier." The court say:

"It does not show him to have exercised the business of carrying packages as a public employment."

"It does not show that he ever undertook to carry goods or money for persons generally, or that he ever held himself out as ready to engage in the transportation of whatever was requested."

The defendants in this case do not come within the description thus given of a common carrier. The evidence does not show them to have exercised the business of carrying packages or bundles by their passenger train as a public employment, or that they ever undertook to carry such articles for persons generally, or that they ever held themselves out as ready to engage in the transportation of such articles for hire as a business, or for such persons as chose to employ them.

In Pennsylvania and Indiana it has been held that a wagoner who, *upon his request*, carries goods for hire, is a common carrier, whether the transportation be his principal business or an occasional and incidental employment. Angel on Com. Car., § 70. But it is believed that such is not the law in this State. In *Sheldon* v. *Robinson*, before cited, the court give a different definition of a common carrier, and say, "The law applicable to common carriers has been said to be one of great rigor, and it would be unjust to impose the responsibilities of a common carrier upon an individual, until he has so conducted or held himself out as to have fairly assumed them." And in sec. 72 of Angel on Common Carriers, it is said, if a person is induced to undertake the business at the *request* of *his employer*, he incurs only the liability of a private carrier.

If a servant, without the authority of the master, carries goods,

the master is not liable, as a common carrier, for the loss of the goods.  *Satterlee* v. *Grant*, 1 Wend., 272; Angel on Com. Car., §§ 72 and 73.

The proprietors of stage coaches, whose employment is to carry passengers, are not deemed common carriers, although as to the baggage of the passengers, they may incur the same liability as common carriers. Story on Bailments, §§ 498, 499; Angel on Com. Car., § 77.  Angel says, "The authorities generally leave no doubt that where a proprietor of a coach holds himself out to the public, as only engaging for the personal conveyance of passengers, and refuses to allow his coach to be a conveyance for goods in general, the courts would consider him not a common carrier."  "If it has been the practice of a driver of one of their coaches to carry articles for hire for his own particular advantage, that fact alone will not render them liable."

The proprietors of railroad cars stand upon the same principles as the proprietors of stage coaches.  Angel on Common Carriers, § 78.

In *Citizens Bank* v. *Nantucket Steam Boat Co.*, 2 Story's Rep., 16, it was held that in order to render the company liable, it must be clearly proved that they had held themselves out to the public as common carriers of bank bills for hire, and that they had authorized the master to contract on their account and not on his own for the carriage thereof.  Mr. Justice *Story* says:

"It has never been imagined, I presume, that the owners of a ferry boat, whose ordinary employment is merely to carry passengers and their luggage, would be liable for the loss of money entrusted for carriage to the boatmen or other servants of the owners, where the owners had no knowledge thereof and received no compensation therefor."  So the owners of stage coaches would not be liable for goods entrusted to their coachmen, where the owners receive no compensation therefor, and did not hold themselves out as common carriers of such goods. Angel on Com. Car., § 103.

The proprietors of stage coaches, railroad cars, and steamboats incur the liability of common carriers as to the luggage of the passengers, but this cannot be extended beyond the ordinary

luggage of the passengers and is never admitted to include merchandize. Angel on Com. Car., §§ 113, 115, and cases there cited.

The evidence in this case, we contend, does not prove the defendants to be common carriers as to their passenger train; according to the authorities before cited, there is no evidence tending to show that the defendants held themselves out as common carriers of goods or bundles, or that they were ready to carry such articles by the passenger train, or received any compensation therefor, but the evidence is the reverse—they did not offer to carry such articles by that train, but their instructions to all their servants were not to send goods by the passenger train, when the owner did not accompany them. If some of their servants, without their knowledge and against their instructions, have occasionally sent goods by that train, that clearly cannot impose upon them the liability of common carriers.

When the facts are ascertained, then, whether those facts make them common carriers or not is a question of law for the court. In this case, all the evidence is reported, and we say, that evidence does not make the defendants common carriers.

It is incumbent on the plaintiffs to prove affirmatively that the defendants are common carriers, within the description of common carriers as it is understood and settled in law. Taking all the evidence reported, to be true as stated, it does not show them to be such, or to have any of the essential requisites of common carriers as they are defined in the books. How then can such evidence be competent to be submitted to the jury to prove them such?

The evidence, in this case, does not show that the goods were delivered to the defendants so as to make them liable, if they were common carriers. The bundle was left in the common depot room, without any label upon it, and the depot master was requested to label it and send it by the next passenger train, which he said he would do. But it was no part of his duty to label articles, and his instructions were not to receive articles, unless they were plainly and distinctly marked, and another rule of the defendants is, that their liability as common carriers

in regard to baggage or other articles, will not commence until such baggage or other articles are put or received on board the train. This bundle was never put or received on board the train, and of course, they are not liable. If the depot master agreed to do something out of the line of his duty, as for instance, to label the bundle and put it on board the train, and failed to do it, the defendants are not liable for his default. The plaintiff's remedy is against the depot master and not against the defendants. A servant acting against his instructions or out of the line of his duty cannot bind his master. In order to make the defendants liable, the plaintiff should prove that the bundle was put on board the train—proving that it was left in the depot room, in the manner stated, is not sufficient. The depot-master in making that agreement was acting out of the line of his duty, and against his instructions, and the defendants ·cannot be liable for his default in that respect.

GILCHRIST, C. J.   The main question presented is, whether there is any evidence competent for the consideration of the jury, that the defendants were common carriers of goods by the passenger trains of cars ?

What are the duties and liabilities of common carriers, and who are to be considered such, are subjects on which the decisions have been very numerous, as might have been expected from the importance of the inquiry, and the great amount of property entrusted to persons of this class.

A common carrier is a person who undertakes to transport from place to place for hire, the goods of those who choose to employ him.   *Gisbourn* v. *Hurst*, 1 Salk., 249 ; *Dwight* v. *Brewster*, 1 Pick., 53. A distinction is made between such persons and those whose business it is to convey passengers, who are said not to be common carriers.   *Aston* v. *Heaven*, 2 Esp., 533 ; *Sharp* v. *Grey*, 9 Bing., 460.   A carrier of goods undertakes to deliver them at all hazards, but a carrier of passengers is not responsible for accidents which happen in spite of every precaution.   *Christie* v. *Gregg*, 2 Camp., 79 ; *Weed* v. *Sand S. Railroad Co.*, 19 Wend., 543.   The reason for this distinc-

tion was given at an early period. It is that in consequence of the public nature of his employment and the danger of collusion with plunderers, it is necessary to regard a common carrier as an insurer. *Forward* v. *Pittard*, 1 T. R., 27 ; *Coggs* v. *Bernard*, 2 Lord Raym., 909. His good conduct and honesty are matters of importance to the whole community. And all persons, it is said, carrying goods for hire, come under the denomination of common carriers. *Moses* v. *Norris*, 4 N. H. Rep., 304. The necessity of the application of a stringent rule to simplify and define the responsibilities of common carriers has been repeatedly declared and ably vindicated in numerous cases. *Hyde* v. *Trent and Mersey Navigation Co.*, 5 T. R., 189 ; *Riley* v. *Horne*, 5 Bingh., 217 ; *Hollister* v. *Nowlen*, 19 Wend., 241 ; *Roberts* v. *Turner*, 12 Johns., 232 ; *Thomas* v. *Boston and Providence Railroad*, 10 Met., 476.

But in order to impose this extensive responsibility upon the defendants, it must appear that they have held themselves out to the world as common carriers by the passenger trains of cars upon their railway. Their object, however, was not the conveyance of goods by these trains, but the transportation of passengers. The cars upon the passenger trains are not provided with conveniences for the deposit of such articles as those now in question, during their transit. They may, however, be used for the carriage of goods, as well as of passengers, if the proprietors see fit to do so, and in that case they become common carriers. Their position would then be similar to that of proprietors of stage coaches, who may, in addition to the transportation of passengers, become liable as common carriers, by usually carrying goods for hire. In *Middleton* v. *Fowler*, 1 Salk., 282, the action was case for the negligence of the defendants in losing a trunk which was delivered to the driver of a coach, who promised to take care of it. It was held that the defendants were not within the custom as carriers, unless they took a distinct price for the carriage of goods as well as of persons, and that money given to the driver was a mere gratuity and could not make the master liable, which could not be done by the servant unless he were acting in execution of the authority given by the master.

Elkins *v.* The Boston & Maine Railroad Co.

In the case of *Allen* v. *Sewall*, 2 Wend., 327 ; 6 Wend., 335, the owners of a steamboat, were held to be liable as common carriers, because they were in the habit of receiving compensation for the freight of light articles carried on board their boat. In *Dwight* v. *Brewster*, 1 Pick., 50, it was held that an established practice of conveying for hire, in a stage coach, parcels not belonging to passengers, rendered the proprietors liable as common carriers ; for although the principal business may be to carry passengers, there is no reason why the proprietors should not be common carriers of merchandize.  And where the driver of a coach, by an arrangement with the proprietors, received compensation for carrying small packages, as a part of his wages, it was held that the proprietors were liable as common carriers, or as bailees for hire.  *Bean* v. *Sturtevant*, 8 N. H. Rep., 325. But if articles be sent by a wagoner for his own benefit, and not for the benefit of his master, the latter is not liable.  *Basing* v. *Butler*, 2 C. & P., 615.  In the case of *Sheldon* v. *Robinson*, 7 N. H. Rep., 164, where it was alleged that the defendant was a common carrier, *Parker, J.*, in pronouncing the judgment of the court, said that the evidence did not show him to have exercised the business of carrying packages as a public employment, or that he ever undertook to carry goods or money for persons generally, although he might in fact have taken all that was offered as a matter of convenience, or that he ever held himself out as ready to engage in the transportation of whatever was requested.

In this case, the evidence shows that twice within two years, goods have been conveyed by the passenger trains, under the charge of some of the persons employed by the defendants.  As the bills, however, did not state that they were carried by the passenger train, and as it does not appear, that it was understood they were to be thus transported, it is perhaps fair to suppose that they were carried on this train, for the temporary convenience of the company, and that they did not intend by so doing to hold themselves out to the world as common carriers by the passenger cars.  The fact that the conductor had carried goods and eggs to market for an individual, as it does not ap-

pear that any compensation was paid therefor to the company, or that it was done by any authority, derived from them, cannot be considered as evidence of anything, beyond a private contract with the conductor, made for the accommodation and convenience of the owner of the property. There is one instance, of the transportation of goods by the passenger train, in the year 1846, for which freight was paid to the baggage master. But this, of itself, does not tend to prove that the defendants have been in the habit of thus transporting goods, or that it was practised by their servants, in such a way that the company and the public must have understood that a custom existed to that effect.

The evidence is, that both the printed rule of the company, and the practice for five years past, had been, not to send articles by the passenger train. These articles were such as are usually carried as personal baggage. They were not accompanied by the owner, and, by the printed rule, on which the defendants rely and by the practice, no agent was authorised to send them by the passenger train. This evidence is not contradicted or qualified, in any degree, by any evidence offered by the plaintiff, or by those parts of the printed rules, on which he relies ; and a decision that the defendants are, notwithstanding, liable as common carriers of these articles, by the passenger train, would conflict not only with the evidence, but with the authorities which define the nature and responsibilities of persons of this description. We find nothing in the authorities authorizing the position that a single instance, like that which happened in the year 1846, standing alone, with no attendant circumstances to give it any additional weight, tends to prove the existence of that habit and practice which must be shown, to constitute the defendants common carriers by the passenger trains. Such responsibilities are not imposed on persons who on one particular occasion transport goods for hire, but on him only, who in the words of *Story,* on Bailments, 322, " undertakes to convey goods for persons generally," and who " holds himself out, as ready to engage in the transportation of goods for hire as a business, and not as a casual occupation, *pro hac vice.*" A practice of conveying goods

for hire, is proved by an accumulation of instances; but though several instances of the like kind may be evidence of the practice, a single instance, by itself, has no weight. We cannot infer from it that the defendants ever did so before, or will ever do so again; whereas, if there be repeated instances of the same description, it will be a fair presumption that they intend to hold themselves out to the world, as being ready to do for the public generally, what they have already, repeatedly performed.

There is another reason also, why the plaintiff cannot recover in this case. When the articles were delivered to the ticket-master, at Andover, there was no label upon them. It could not be known on inspection, who was the owner of them, or to what place they were to be sent. The ticket-master promised to put a label upon them, but that was his contract, and not the contract of the defendants. There is nothing to show, that they ever undertook to render such services to the public, and the evidence is, that it was not the duty of the ticket-master. Without something to indicate the disposition to be made of the articles, it would be obviously unjust to compel the defendants to be responsible for them. The undertaking by the ticket-master to do something which neither he nor the company was bound to do, was, if not a mere voluntary courtesy, certainly not a contract binding upon the defendants, and it is difficult to see how, under these circumstances, they can be liable.

*Judgment on the Verdict.*