## BLUMENTHAL et al. v. UNITED STATES.

Nos. 10596–10600, 10603, 10604.

Circuit Court of Appeals, Eighth Circuit.

March 9, 1937.

L. L. Drill and Robert V. Rensch, both of St. Paul, Minn. (Drill, Drill & Rensch, of St. Paul, Minn., on the brief), for appellants Harry Feinberg and Fred Blumenthal.

Morris J. Owen, of Winona, Minn., for appellants Nick Meyers and Henry Czaplewski.

A. Jerome Hoffmann, of St. Paul, Minn., for appellants Archie Bell, Albert Wanous, and John H. Anderson.

James J. Giblin, Asst. U. S. Atty., of St. Paul, Minn. (George F. Sullivan, U. S. Atty., and John L. Wheeler, Asst. U. S. Atty., both of St. Paul, Minn., on the brief), for the United States.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

Separate appeals have been taken on a joint record from judgments and sentences entered on verdicts of guilty of a charge of conspiracy to violate the provisions of section 240 of the Criminal Code (title 18 U.S.C.A. § 390).

The indictment charged that defendants knowingly and unlawfully conspired to ship and cause to be shipped by motortrucks and vans from divers places in the state of Wisconsin to divers places in Minnesota and Iowa, certain packages of spirituous liquor, namely, alcohol, without labeling such packages on the outside cover so as to show the name of the consignee, the nature of the contents, and the quantity thereof contained in such packages. The overt acts charged consisted of the transporting on hired trucks or vans of various loads of unlabeled liquor from points in Wisconsin to points in Minnesota, which transporting was done or caused to be done in each case by only one or two of the defendants who were jointly indicted. There were seventeen defendants so jointly indicted, seven of whom

have appealed. Demurrers to the indictment were overruled.

On conviction, the punishment fixed by the lower court ran from a fine of $3,000 and two years' imprisonment in the federal prison in the case of the appellant Meyers, to five months' imprisonment in a workhouse in the case of the appellant Anderson.

The parties will be referred to as they appeared below.

Reversal is sought for the alleged errors of the court (1) in overruling defendants' demurrer; (2) in giving or refusing to give certain requested instructions to the jury; and (3) in denying their motion for a directed verdict.

In support of their contention that the court erred in overruling their demurrer, defendants contend that section 240 of the Criminal Code was repealed, superseded, or rendered inoperative by the adoption of the Eighteenth Amendment to the Constitution and its implementing legislation, the National Prohibition Act (27 U. S.C.A. § 1 et seq.) The conspiracy charged is alleged to have continued from November 1, 1933, to February 5, 1934. Section 240 of the Criminal Code was enacted as the third and last section of the Act of March 4, 1909, known as the Knox Act. The first of these sections, 238 (18 U.S.C.A. § 388), prohibits delivery of interstate shipments of intoxicating liquor to any one other than the bona fide consignee thereof, and applies to officers, agents, or employees of railroads, express companies, or other common carriers. The next section, 239 (18 U.S.C.A. § 389), refers to carriers who collect the purchase price of interstate shipments. The next section, 240 (18 U.S.C.A. § 390), the one here involved, reads as follows: *"Same; shipping packages in interstate commerce not plainly marked.* Whoever shall knowingly ship or cause to be shipped, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, any package of or package containing any spirituous, vinous, malted, fermented, or other intoxicating **liquor of** any kind, unless such package be so labeled on the outside cover as to plainly show the name of the consignee, the nature of its contents, and the quantity contained therein, shall be fined not more than $5,000; and such liquor shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the seizure and forfeiture of property imported into the United States contrary to law."

It will be helpful to consider the legislative history of this act and the conditions which prompted its enactment. In the early 80's, a number of the states of the Union had enacted prohibition laws. These local laws were to a very considerable degree rendered ineffectual by the decisions of the Supreme Court to the effect that because of the operation of the commerce clause of the Constitution, the local laws could not be made applicable to intoxicating liquor coming from abroad, until or unless such liquor had become mingled with the common mass of property within the territory entered. Bowman v. Chicago & N. W. Ry. Co., 125 U.S. 465, 8 S.Ct. 689, 1062, 31 L.Ed. 700; Leisy v. Hardin, 135 U.S. 100, 10 S.Ct. 681, 34 L.Ed. 128. In an attempt to enable the states to enforce their local prohibition laws, Congress passed the so-called Wilson Act August 8, 1890 (27 U.S.C.A. § 121), which provided that intoxicating liquor transported into a state for use, consumption, or sale should become subject to state laws, and should not be exempt by reason of being introduced in the original package or otherwise, but under this act it was held that intoxicating liquors could be introduced into a state unaffected by the state law until delivery of the same. Rhodes v. Iowa, 170 U.S. 412, 18 S.Ct. 664, 42 L.Ed. 1088; American Express Co. v. Iowa, 196 U.S. 133, 25 S.Ct. 182, 49 L. Ed. 417; Heymann v. Southern R. Co., 203 U.S. 270, 27 S.Ct. 104, 51 L.Ed. 178, 7 Ann.Cas. 1130. By resort to a C. O. D. sale of liquor in the channels of interstate commerce, liquor distributions in the dry states were still possible. In these circumstances, and as a result of them, the Knox Act was passed March 4, 1909. Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266. Still later, as a further effort to aid the dry states in the enforcement of their liquor laws, the Webb-Kenyon Act was enacted (27 U.S.C.A. § 122), and the so-called Reed Amendment (27 U.S.C.A. § 123). McCormick & Co. v. Brown, 286

U.S. 131, 52 S.Ct. 522, 76 L.Ed. 1017, 87 A.L.R. 448.

Each of the sections of the Knox Act penalizes certain acts with reference to the interstate shipment of liquor. Congress at that time had no authority to legislate on the subject except as the traffic affected interstate commerce. The act granted no right to ship liquor in interstate commerce, except as might be implied from its failure to penalize or otherwise prohibit all interstate shipments.

By section 1 of the Eighteenth Amendment to the Constitution, which became effective in January, 1920, it was provided as follows: "After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

The next section provided that Congress and the several states should have concurrent power to enforce the amendment by appropriate legislation. So far as the prohibition against intoxicating liquor for beverage purposes was concerned, the Eighteenth Amendment was self-executing. National Prohibition Cases, 253 U. S. 350, 40 S.Ct. 486, 588, 64 L.Ed. 946. Without supplemental legislation, it struck down every legislative act, congressional, state, or territorial, which authorized or sanctioned what it prohibited. It did not cover the regulation, manufacture, sale, or transportation of intoxicating liquor for nonbeverage purposes.

Manifestly, so far as section 240 of the Criminal Code (18 U.S.C.A. § 390) affected the transportation of intoxicating liquor manufactured and sold for nonbeverage purposes at least, it was not repealed by the Eighteenth Amendment.

Following the adoption of the Eighteenth Amendment, and pursuant to the authority thereby granted, Congress enacted the National Prohibition Act (title 27 U.S.C.A. §§ 11–64), otherwise known as the Volstead Act. It did not by specific reference repeal the Knox Act, but provided that "all provisions of law that are inconsistent with this act [chapter] are repealed only to the extent of such inconsistency and the regulations herein provided for the manufacture or traffic in intoxicating liquor shall be construed as in addition to existing laws." Section 35, tit.

2 (27 U.S.C.A. § 52). If the Knox Act was repealed therefore, it was because it was inconsistent with the provisions of the Volstead Act. Repeals by implication are not favored, and courts are loathe to hold that a statute has by implication been repealed by a later one. United States v. Noce, 268 U.S. 613, 45 S.Ct. 610, 69 L.Ed. 1116; United States v. Tynen, 11 Wall. 88, 20 L.Ed. 153. The implication must be clear, necessary, and irresistible. Chase v. United States (C.C.A.8) 238 F. 887; Wood v. United States, 16 Pet. 342, 10 L.Ed. 987.

The purpose of the Eighteenth Amendment and the Volstead Act was to prohibit, not to regulate, the sale or traffic in intoxicating liquors for beverage purposes. All prohibition laws were repealed by the adoption of the Eighteenth Amendment and the enactment of the Volstead Act, but regulatory laws were not necessarily so repealed. Vigliotti v. Pennsylvania, 258 U.S. 403, 42 S.Ct. 330, 331, 66 L.Ed. 686; Kennedy v. United States, 265 U.S. 344, 44 S.Ct. 501, 68 L.Ed. 1045; McCormick & Co. v. Brown, 286 U.S. 131, 52 S.Ct. 522, 526, 76 L.Ed. 1017, 87 A.L.R. 448; United States v. One Ford Coupé Automobile, 272 U.S. 321, 47 S.Ct. 154, 71 L. Ed. 279, 47 A.L.R. 1025.

In Vigliotti v. Pennsylvania, supra, defendant had been convicted under a state statute for the sale of liquor without a license. On appeal to the Supreme Court it was urged that the state act under which defendant had been convicted was in conflict with the Eighteenth Amendment and the National Prohibition Act. In the course of the opinion, after referring to the holding of the Supreme Court of Pennsylvania to the effect that this state law survived as a method of controlling the sources of supply and distribution within her borders, said: "The Brooks Law [Act May 13, 1887 (P.L. 108)], as thus construed does not purport to authorize or sanction anything which the Eighteenth Amendment or the Volstead Act prohibits. And there is nothing in it which conflicts with any provision of either. * * * To prohibit every sale of spirituous liquors, except by licensed persons, may certainly aid in preventing sales for beverage purposes of liquor containing as much as one-half of 1 per cent. of alcohol, and that is what the Volstead Act prohibits."

In Kennedy v. United States, supra, the question presented was whether a statute

making criminal the possession of intoxicating liquor in the Indian Country was inconsistent with and hence superseded by the Eighteenth Amendment and the Volstead Act. It was held that there was nothing incompatible to be found in this statute, as it was regulatory of a portion of the general liquor traffic.

In McCormick & Co. v. Brown, supra, the court considered the Webb-Kenyon Act, which was passed prior to the adoption of the Eighteenth Amendment and the enactment of the Volstead Act. In the course of the opinion in that case, it was said: "The appellants do not urge, and there would be no ground for such a contention, that either the Eighteenth Amendment or the National Prohibition Act had the effect of repealing the Webb-Kenyon Act. The Congress has not expressly repealed that act, and there is no basis for an implication of repeal."

A painstaking examination of the many provisions of the National Prohibition Act convinces that the Knox Act does not permit, authorize, or sanction anything which is prohibited by the Eighteenth Amendment or the Volstead Act. The provisions of the Knox Act grant no rights or privileges, but they are strictly regulatory of interstate traffic. Although the language of certain sections of the National Prohibition Act is somewhat similar to that of the Knox Act, the sections of the National Prohibition Act bearing such similarity are limited in scope to shipments under the permit system of the National Prohibition Act, and are applicable only to shipments for nonbeverage liquor, while the provisions of the Knox Act apply to all liquor which may be regulated by state law. Section 26 of the National Prohibition Act (title 2 [27 U.S.C.A. § 40]) making it unlawful to transport intoxicating liquor, is not, we think, inconsistent with the Knox Act, which penalizes the shipment without labels, for the Knox Act is broader in scope and is not limited to intoxicating liquor for beverage purposes, and it would be supplemental to and in aid of the enforcement of section 26 of the National Prohibition Act, in that it required the character of the product transported to be set forth so that all might see what was being transported. United States v. Sischo, 262 U.S. 165, 43 S.Ct. 511, 67 L.Ed. 925.

■ It is also to be observed that by Act of June 25, 1936, § 8 (18 U.S.C.A. § 390), subsequent to the repeal of the Eighteenth Amendment and the Volstead Act, Congress amended section 240 of the Knox Act. This amendatory act may be considered as a legislative interpretation, and as such has a direct bearing on the legislative intent. It was manifestly the understanding of Congress that the Knox Act had not been repealed; otherwise, there would have been nothing to amend. It is, of course, ultimately the province of the courts to interpret statutes, yet in so doing, they should give effect to the legislative intent, and hence, the legislative interpretation is entitled to consideration. First Nat. Bank v. State of Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486; United States v. Stafoff, 260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358; Board of Com'rs v. Bernardin (C.C.A.10) 74 F.(2d) 809; Fire Companies Bldg. Corp. v. Com'r of Int.Rev. (C.C.A.2) 54 F.(2d) 488; New York Life Ins. Co. v. Burbank (Iowa) 216 N.W. 742; Belau v. Buss, 48 S.D. 595, 205 N.W. 669; Straub v. Lyman Land & Invest. Co., 30 S.D. 310, 138 N.W. 957, 46 L.R.A.(N.S.) 941.

If we were otherwise in doubt as to whether the Knox Act was repealed by the enactment of the Prohibition Act, this amendment should, we think, be accepted as persuasive evidence of the intention of Congress, and that, in the final analysis, is the province of the courts in construing congressional enactments.

■ We conclude that section 240 of the Knox Act was not repealed nor superseded by the Eighteenth Amendment or the Volstead Act, and that the court did not err in overruling defendants' demurrer.

At the close of the court's charge, defendants asked the court to give the following instruction: "We request the court to instruct the jury to the effect that before they would be justified in finding that the acts done constituted a shipment, they must first be satisfied that a shipment was made by common carrier."

This request was denied, and no request was made to define the term "common carrier." The court had already instructed the jury, among other things, as follows:

"It is contended by the government that these men did have a positive and tacit understanding that they would ship alcohol from Wisconsin to Minnesota substantially in the manner which is indicated by the government's evidence; that is, that the trucks and vans belonging to the Winona

Dray Line would be used as a carrier or means of transportation in shipping the alcohol from various points in Wisconsin to Winona, Minnesota, that is, the government contends that the parties had in mind that the alcohol would be shipped in gallon tin containers, wrapped together substantially in the manner in which the government contends that the evidence indicates that this alcohol was shipped during the period from November 1933 to February 1934. * * *

"Under the law it is sufficient if any of the defendants, with knowledge that the law was designed to be violated in the particular manner charged in the indictment, aided in any way by affirmative acts in the accomplishment of the purpose of the conspiracy. In other words, if any one of these defendants knew of this plan and scheme which the government contends existed on the part of some of these defendants, to ship and transport alcohol from Wisconsin to Minnesota in the manner in which the government contends that it was shipped, and with knowledge of such plan and scheme any defendant by any affirmative act aided and assisted in carrying out the general purposes of the scheme, then, under the law, he becomes a co-conspirator and is guilty to the same extent as the one who may have initiated the original unlawful conspiracy."

In support of their contention that this provision of the Knox Act should be limited to interstate shipments by common carrier, defendants cite and rely upon United States v. Freeman, 239 U.S. 117, 36 S.Ct. 32, 60 L.Ed. 172, and One Truck Load of Whisky v. United States (C.C.A. 6) 274 F. 99. The government, on the other hand, contends that the statute should not be so limited, citing among other authorities, Marifian v. United States (C. C.A.8) 82 F.(2d) 628, United States v. Simpson, 252 U.S. 465, 40 S.Ct. 364, 64 L.Ed. 665, 10 A.L.R. 510, and Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266.

In the condition of the record we do not think it necessary to decide whether the statute should be construed so as to limit its operation to interstate shipments by common carrier. Conceding, without deciding, that such is the law, we do not think it can avail the defendants in the instant case. It is a question of law for the court to determine what constitutes a common carrier, though it may be a question of fact whether, under the evidence, if it is disputed, a carrier comes within the definition of a common carrier and is carrying on its business in that capacity. State ex rel. v. Rosenstein, 217 Iowa, 985, 252 N.W. 251. It is observed that the court was not asked to define nor to state what was necessary to constitute a common carrier. The jury without such instruction could not possibly have determined whether or not the shipment was made by a common carrier. To do so would have required them to pass upon a question of law. The requested instruction was therefore properly denied. But we do not think the defendants could have been prejudiced by the refusal to give the instruction, even if they had been entitled to have it given, because under the undisputed evidence we think it would have been the duty of the court to have decided as a matter of law that the liquor in question was shipped or caused to be shipped by a common carrier.

The term "common carrier" has been variously defined, but, generally speaking, it may be said that "one who undertakes for hire or reward to transport the goods of such as chose to employ him, from place to place" is a common carrier. Propeller Niagara v. Cordes, 21 How. 7, 16 L. Ed. 41; State of Washington ex rel. Stimson Lumber Co. v. Kuykendall, 275 U.S. 207, 48 S.Ct. 41, 72 L.Ed. 241; United States v. Sioux City Stock Yards Co. (C. C.) 162 F. 556, affirmed (C.C.A.) 167 F. 126; Bay v. Merrill & Ring Lumber Co. (D.C.) 211 F. 717, affirmed (C.C.A.) 220 F. 295; Louis McCusker v. Curtiss Wright Flying Service, Inc., 269 Ill.App. 502; Elkins v. Boston, etc., R. Co., 23 N.H. 275. One who holds himself out as ready to engage in the transportation of goods or property for hire as a public occupation is a common carrier, regardless of the mode of transportation employed. It may be railroad, truck, automobile, dray, moving van, or any other suitable means of transportation (Claypool v. Lightning Del. Co., 38 Ariz. 262, 299 P. 126; Denver & R. G. W. Ry. Co. v. Linck (C.C.A.10) 56 F. (2d) 957; State v. Boyd Transfer & Stor. Co., 168 Minn. 190, 209 N.W. 872; Anderson v. Yellow Cab Co., 179 Wis. 300, 191 N.W. 748, 31 A.L.R. 1197) and it is not even material that the equipment be owned by the operator, nor that there be a regular tariff of charges. Neither is it

essential that the transportation be upon fixed routes or between definite termini.

[10] The undisputed evidence shows that the Winona Dray Line Company was acting as a common carrier in the transportation of intoxicating liquors transported by it for the various defendants in this case. Thus, the bookkeeper of the dray line testified that the company was doing a general hauling business, local and long distance, making frequent trips from Winona to the Twin Cities and trips from Winona to Milwaukee, Chicago, Eau Claire, and various other places. He said: "They had occasion to go into Iowa with vans once in a while. The nature of the hauling into Wisconsin principally was seed and for a while it was meat. We did hauling for the merchants, the retailers and wholesalers. As to the fact as to whether this dray line was ready to haul for any and all people that asked for it, that was the type of business that had been carried on for several years. Speaking about trips to Wisconsin and so on and as to what we did about getting loads on the way back, when a trip would be made to any of those places which we hauled to and if they were not regular runs, if someone called for a truck to take a load of freight to some town, we would of course, try to get a load coming back so that we would get a fair revenue for the round trip. I am speaking now of hauls between Minnesota and Wisconsin. * * * We hauled wherever we could get business that would net us some return. In hauling between Winona and points in Wisconsin, it was necessary to have permits from the Public Service Commission of Wisconsin. We had such permits during the year 1933 and 1934. A special fee was to be paid on each truck."

Those of the defendants who negotiated with the truck line for transportation inquired whether the trucks were properly licensed to operate in Wisconsin.

A witness connected with the dray line testified: "In our hauling of merchandise from Winona to Milwaukee, Wisconsin, or other points in Wisconsin, or Iowa, I don't think or mean to say that we rented out these rigs—not to my knowledge. In the matter of hauling this alcohol, we hauled it and charged for what was hauled."

A further review of the testimony on this point would seem to be quite unnecessary, as we are clear that the Winona Dray Line transported the alcohol, some 40,000 gallons of it, in interstate commerce as a common carrier. We do not think it was error to deny the requested instruction, but whether error or not, it could not have been prejudicial.

Complaint is also made that the court in its charge referred to the alleged conspiracy as an established fact. The charge was a lengthy one, and in considering an exception to it, the entire charge must be read together. The exception was "to that portion of the court's charge in substance referring to the witness Henry Czaplewski, 'If he did, then he is just as guilty as though he initiated the conspiracy,' as indicating that a conspiracy had in fact been initiated. We except to all those portions of the court's charge in substance, in words and substance indicating and assuming that a conspiracy did in fact exist." When this exception was taken, the court gave the following instruction: "In connection with one of the exceptions taken by one of the counsel for the defendants, I will state to the jury that of course I leave to you, to determine whether or not there was a conspiracy formed. Any reference I may have made in my charge did not assume that it was my opinion that a conspiracy had been formed, or that I assumed that the evidence indicated it. That is a jury question, for you to determine in light of all the evidence that may have been adduced."

In its charge, the court explained to the jury that it was the jury's duty to determine the facts and that it was the sole judge of the facts, and that they were to disregard any statements of fact made by the court, if the statements did not coincide with their recollection. The court explained the government's contention that the defendants had entered into a conspiracy and spoke of it many times throughout the charge as a contention made by the government, and the court instructed that: "If it be a fact that these parties conspired to do what the Government contends that they did do, that is, the shipment of alcohol in interstate commerce, in gunny sacks and packages without any labels, then I charge you that they are guilty of the crime of conspiring, etc."

After explaining the contention of the government, the court frequently made reference to the conspiracy contended for,

simply as "the conspiracy," or "this conspiracy." Among other things, the court instructed near the end of the charge, that: "We are here to consider only one issue, and that is whether or not these men conspired to violate the statute I have called to your attention, and that issue, and that issue alone, is the one that you will be called upon to determine."

At the close of the charge, in response to an exception taken by counsel, the court further instructed: "Counsel has called to my attention, in discussing the overt acts, that I may have inadvertently made a misstatement, and if I did, I hasten to correct it. First, you must find from all this evidence, that the criminal agreement was entered into as the Government charges in this indictment. That is what constitutes a conspiracy, a criminal agreement or an agreement to perform a criminal act. The conspiracy in this case is alleged to be a violation of this statute. If that agreement was entered into, then before it becomes effective, some overt act must be done in furtherance thereof. That is what I meant to say, and counsel says that I did not state it very clearly, or that I made a misstatement."

We think the jury could not have been misled by the instructions objected to. If there was any chance of misunderstanding in the first instance, that was clearly cured by the court's additional instructions. Considered in their entirety, the instructions clearly presented the issue of fact to be determined by the jury. The court explained that it was their province to pass upon and determine that issue, and that any statement made by the court with reference to the facts that did not accord with their own recollection should be disregarded. We are of the view that the court committed no prejudicial error in its instructions.

■ The sufficiency of the evidence to sustain the verdict of guilty is brought to this court by the exception of defendants to the denial of their motion for a directed verdict interposed at the close of all the testimony. It is first urged that there was no proof to show that the defendants had knowledge that the law required containers of alcohol to be labeled as prescribed by section 240, and it is urged that the transporting of alcohol without labels is in itself an innocent act and criminal only because prohibited by statute. As a general rule, if the evidence proves that an accused committed the unlawful act charged, it will be presumed that the act was done with criminal intent, and it is incumbent upon him to rebut this presumption. Felton v. United States, 96 U.S. 699, 24 L.Ed. 875; United States v. Breese (C.C.) 173 F. 402.

■ It is elementary that every one is presumed to know the law of the land, whether that be the common law or the statutory law, and hence, one's ignorance of the law furnishes no defense for criminal acts, and this rule applies whether the crime charged is malum prohibitum or malum in se. Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930; Miles v. United States, 103 U.S. 304, 26 L.Ed. 481; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Jellico Coal Min. Co. v. Commonwealth, 96 Ky. 373, 29 S.W. 26; Commonwealth v. Raymond, 97 Mass. 567; Commonwealth v. Waite, 11 Allen (Mass.) 264, 87 Am.Dec. 711; State v. Foster, 22 R.I. 163, 46 A. 833, 50 L.R.A. 339; Chadwick v. United States (C.C.A.6) 141 F. 225; United States v. Patten, 226 U.S. 525, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.(N.S.) 325; Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Fall v. United States (C.C.A.8) 209 F. 547.

■ Assuming, without deciding, that the presumption was a rebuttable one, it is to be observed that the defendants introduced no evidence in an attempt to rebut the presumption. The corpus delicti having been established, and the government having thus proved a prima facie case, the burden of adducing evidence to rebut the presumption shifted to the defendants. The matter was peculiarly within their knowledge. Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624. But the record is not devoid of evidence tending to show criminal intent. Some of these facts may properly here be noted.

Defendant West, at the beginning of the negotiations with the dray line, wanted to be assured that the trucks were properly licensed in Wisconsin so as to avoid trouble that might result if patrol men should stop the trucks. False bills of lading were prepared and carried by drivers to show false consignor, false contents of package, and false consignee, for the purpose of deceit in case of inspection. Higher wages were paid the drivers because of the fear of arrest. Many other attending

circumstances point to guilty knowledge and criminal intent.

■ Defendants urge that there was a fatal variance between the allegations of the indictment and the proof, it being contended that while the indictment charged one conspiracy among all the defendants, the proof failed to show such conspiracy, but tended to prove that the defendants acted separately or in separate groups. As has already been observed, the indictment charged that the defendants conspired to violate section 240 of the Criminal Code (18 U.S.C.A. § 390), in that they did knowingly and unlawfully ship and cause to be shipped alcohol by motortrucks and vans from places in the state of Wisconsin to Owatonna and to Winona, in the state of Minnesota, and to places in Iowa, without complying with the provisions of said section 240. Eleven overt acts were charged. The existence of a conspiracy must generally be established by circumstantial evidence, and in support of the charge of conspiracy, the overt acts and the circumstances under which they are committed may be considered in connection with other evidence. Safarik v. United States (C.C.A.8) 62 F.(2d) 892; Goode v. United States (C.C.A.8) 58 F.(2d) 105; Feigenbutz v. United States (C.C.A.8) 65 F.(2d) 122; Galatas v. United States (C.C.A.8) 80 F.(2d) 15.

■ While there must be an agreement among the defendants charged, it need be in no particular form; it need not be expressed, but may be an implied understanding, and it is usually to be inferred from the circumstances shown in each case. The factor common to all the transactions is the Winona Dray Line, owned and operated by the defendant Pete Merchlewitz. The jury may well have believed from direct evidence, or may have inferred from such evidence and the attending circumstances, that arrangements for carrying on this unlawful traffic were first made through negotiations by the defendant Nick Meyers and Mac West with the Winona Dray Line. The alcohol was mostly furnished by defendant Feinberg. Later other defendants joined in this scheme or plan for carrying on this unlawful traffic, all through the Winona Dray Line. Part of the alcohol was transported to Winona, part of it to Owatonna, and part of it to points in Iowa. It was practically all secured from the same source, and all transported through the same agency, and all employed the same fraudulent devices or deception. All took advantage of the arrangements originally made by a part only of the defendants. Certain book accounts of these transactions were kept by the Winona Dray Line. Part of them were in the name of Nick Meyers, part of them were in the name of West, and part of them were in the name of "Harry." Yet it is found that Meyers paid substantial parts of the account charged to West and West made payments on accounts charged to Meyers. A recital of the details and attending circumstances would unduly extend this opinion, but a careful study of the evidence convinces that they were sufficient to warrant the jury in inferring that there was a conspiracy involving all the defendants, with the single exception hereafter to be noted, to carry on through this common agency and through the plan agreed upon between that agency and a part of the defendants, and later joined in by the other defendants, this forbidden traffic. It is true that the evidence tended to show that all of the defendants may not have been interested in each of the shipments, but the shipments were all made pursuant to this unlawful conspiracy, and the conspiracy was for the purpose of facilitating a violation of section 240 of the Criminal Code. It was not material that this liquor may have been separately sold. The statute is confined to a regulation of its shipment in interstate commerce.

It must be admitted that counsel for appellant have cited authorities which seem to give support to their contention. But we are of the view that all precedents established by the federal courts on this subject were superseded or modified by the late decision of the Supreme Court in Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. In that case, in an opinion by Justice Sutherland, it is, among other things, held (syllabus): "Where the proof shows two conspiracies, each fitting the single charge in the indictment, and each participated in by some but not all of the convicted defendants, one of them who was connected by the evidence with one only of the conspiracies revealed by it has no ground to complain of the variance if it did not affect his substantial rights."

■ If, therefore, it be conceded that there was more than one conspiracy, it cannot be said, in view of the decision of

532

the Supreme Court in Berger v. United States, supra, that this was fatal, and it does not appear that either of the defendants could have been prejudiced by reason of that fact.

There remains for consideration the question of the sufficiency of the evidence to sustain the verdict as to the defendant Blumenthal. He was brought into the transactions on only one occasion. In the latter part of December, 1933, defendant Merchlewitz, the owner of the dray line, was sent to Milwaukee by defendant Meyers to get a load of alcohol. He was directed to go to the Atlas Storage & Transfer Company and ask for Nick, the Greek, or Fred Bloom. He, with another party, went to the place designated. Blumenthal was absent but arrived about 6 o'clock in the ·evening. After a telephone conversation with some one, the identity of whom is not disclosed by the record, he told Merchlewitz to go to Port Washington to the Hoffmann House and see a party by the name of Sam. Pursuant to this suggestion they went to Port Washington and obtained a load of alcohol from Sam, from whom they had in fact obtained alcohol on some previous occasions. The testimony identifying Blumenthal as the man with whom Merchlewitz talked is very unsatisfactory. The witnesses had apparently seen the man on only this one occasion. Blumenthal's place of business was a can factory. There is no evidence, direct or circumstantial, warranting the jury in finding that Blumenthal entered into any agreement with the other defendants, or that he had any knowledge of their agreement to transport alcohol. There was no evidence as to what the telephone conversation was which Blumenthal carried on before he advised Merchlewitz to go to Port Washington for alcohol. There was nothing ·to show that he knew the alcohol was to be moved in interstate commerce, or that if it was to be so moved, it would be moved in violation of the statute. The evidence might be sufficient to arouse suspicion, but it could only reach that dignity by pyramiding presumptions, and verdicts must be based on substantial evidence.

The judgments appealed from by the defendants other than the defendant Blumenthal are affirmed, and the judgment as to Blumenthal is reversed, and as· to him the cause is remanded for further proceedings consistent herewith.